[No. 27453. Department Two. April 27, 1939.]

THE STATE OF WASHINGTON, *on the Relation of Jesse Knabb, Plaintiff,* v. JOHN A. FRATER, *as Judge of the Superior Court for Kitsap County, Respondent.*[1]

[1] Reported in 89 P. (2d) 1046.

W. A. Beakley, H. Sylvester Garvin, and George F. Vanderveer, for relator.

Ralph E. Purves and Wm. D. Askren, for respondent.

SIMPSON, J.—This proceeding comes by way of a writ of certiorari for the review of the action of the superior court of Kitsap county in ousting the relator as mayor of the city of Bremerton, a city of the second class, operating under the commission form of government.

The relator and Peter Desimon were charged with the crime of conspiring to establish and operate under their management and supervision, in the city of Bremerton, gambling games, games of chance, gambling devices, and to sell lottery tickets. The games were specified as a card game called "Black Jack," games of dice called "Crap" and "Chuck-a-Luck," and automatic pay-off pin-ball machines.

The information in the criminal case also charged that the defendants agreed to endeavor, by persuasion and the promise of monetary reward, to induce Ralph E. Purves, the prosecuting attorney of Kitsap county, in his official capacity, not to enforce the gambling laws of the state of Washington with respect to the games and devices to be operated by defendants.

The relator was tried, and the jury returned a verdict of guilty November 17, 1938. December 12, 1938,

relator was sentenced to imprisonment in the county jail for a term of twelve months and to pay a fine in the sum of one thousand dollars.

December 19, 1938, Ralph E. Purves, as prosecuting attorney of Kitsap county, filed an information in the nature of *quo warranto,* in which the facts relative to the trial, conviction, and sentence of relator were set forth, together with the allegation that, on or about the 16th day of December, 1938, the city commissioners of the city of Bremerton duly and regularly passed a resolution declaring the office of the mayor of that city vacant by virtue of his conviction of the crime of conspiracy. The allegations in the *quo warranto* information were followed by a prayer that a decree be entered adjudging that relator had forfeited the office of mayor of the city of Bremerton.

An order to show cause why the decree prayed for should not be granted was issued by the court, designating December 23, 1938, as the day of hearing. Relator answered the show cause order, admitting the allegations of the information to which we have just referred, and alleged that the offense with which he was charged was not an infamous crime or felony, or a malfeasance in office; that it did not involve a violation of relator's official oath as mayor of the city of Bremerton; that the judgment entered against him was erroneous; and that the relator had appealed from the judgment of conviction to the supreme court of the state of Washington.

The case was tried to the court, and a judgment entered to the effect that the office of relator as mayor of the city of Bremerton had been vacated and forfeited by relator as of the date of December 12, 1938, on account of his conviction on that date of the crime named in the information.

Relator urges error on the part of the trial court in

holding that his conviction *ipso facto* entailed forfeiture of his office, and in the entering of a judgment of ouster. The question presented is: Did the relator forfeit his right to hold office as mayor of the city of Bremerton upon his conviction of the crime of conspiracy to violate the gambling laws of the state of Washington?

■ Article V, § 3, of our constitution provides:

"All officers not liable to impeachment shall be subject to removal for misconduct or malfeasance in office, in such manner as may be provided by law."

The legislature implemented this constitutional provision by enacting Rem. Rev. Stat., §§ 2289 and 9950 [P. C. §§ 8724, 2349], which, respectively, read:

"The conviction of a public officer of any felony or malfeasance in office shall entail, in addition to such other penalty as may be imposed, the forfeiture of his office, and shall disqualify him from ever afterward holding any public office in this state."

"Every office shall become vacant on the happening of either of the following events before the expiration of the term of such officer:  . . .

"5. His conviction of an infamous crime, or of any offense involving a violation of his official oath; . . ."

Relator contends that his conviction of the crime of conspiracy to violate the gambling laws of this state does not constitute malfeasance in office, in that the crime of which he was convicted did not affect the performance on his part of the duties of mayor. He cites *State ex rel. Martin v. Burnquist,* 141 Minn. 308, 170 N. W. 201, 609; Mechem on Public Officers, 290, § 457; and Throop on Public Officers, 363, § 367, and other cases of like import; all of which support the following rule announced in the last mentioned authority:

"Where the constitution or a statute authorizes a removal for official misconduct, or misfeasance, misconduct, or maladministration in office, or similar acts of misbehavior in office, the general rule is, that the officer can be removed only for acts or omissions relating to the performance of his official duties, not for those which affect his general moral character, or his conduct as a man of business, apart from his conduct as an officer. In such a case, as a learned judge has remarked, it is necessary 'to separate the character of the man from the character of the officer.' "

Admitting the force of the rule contained in the citations, we are of the opinion that relator did violate a duty of his office when he conspired to introduce and protect gambling in the city of Bremerton and to dissuade the prosecuting attorney of Kitsap county from discharging the legally prescribed duties of his office. This conspiracy was of such a nature that its radius was not confined to the sphere and domain of relator's personal and private life, but invaded his official life and rendered impossible the faithful discharge of his official duties in accordance with his oath of office. Relator, as mayor, was superintendent of the department of public safety (Rem. Rev. Stat., § 9101 [P. C. § 908]) and official head of the city government. It was his official and sworn duty to compel obedience to the ordinances of his city and the statutes of his state. When he conspired to introduce gambling in the city, he violated the principal and most important duty of the high office to which he had been elected by his fellow citizens. He was clearly guilty of malfeasance in office as that term is used in our constitution and statutes.

Relator urges, however, that Rem. Rev. Stat., § 9950, is unconstitutional, in that it attempts to enlarge the scope of the provisions of Art. V, § 3, of the

constitution of this state. We are unable to concur with relator's contention.

A statute will, if possible, be so construed as to render it valid, and it will not be declared invalid unless its violation of the fundamental law is clear and palpable. The statute is presumed to be valid, and the burden rests upon the one who challenges its validity to establish that fact. *State v. Hanlen,* 193 Wash. 494, 76 P. (2d) 316; *McDermott v. State,* 197 Wash. 79, 84 P. (2d) 372.

Rem. Rev. Stat., § 9950 (5), particularizes the term "malfeasance in office" appearing in Art. V, § 3 of the state constitution, and clearly reflects a statute which the legislature was empowered to enact.

"Malfeasance" is defined as follows:

"Evil doing; ill conduct; the commission of some act which is positively unlawful; the doing of an act which is wholly wrongful and unlawful; the doing of an act which the person ought not to do at all; the doing of what one ought not to do; the performance of some act which ought not to be done; the unjust performance of some act which the party had no right, or which he had contracted not, to do." 38 C. J. 344.

"The terms malfeasance and neglect of duty are comprehensive terms and include any wrongful conduct that affects, interrupts, or interferes with the performance of official duty." *State v. Ward,* 163 Tenn. 265, 43 S. W. (2d) 217.

Contention is made that relator has appealed from the judgment of conviction in the criminal action, and that his appeal is now pending in this court. Any contention that the appeal stays the ouster proceedings is foreclosed by our decision in *State ex rel. Guthrie v. Chapman,* 187 Wash. 327, 60 P. (2d) 245, 106 A. L. R. 640.

Relator introduced at the trial in this proceeding several instructions given by the court in the criminal case and urged that the court committed error in giving them to the jury, and contends for that reason this case should be decided in his favor or held in abeyance until such time as the appeal in the criminal case could be decided. However, we cannot consider these instructions because they are not set forth in relator's opening brief as required by Rule XVI (5), 193 Wash. 25-a, of the rules of this court. *State v. Jensen,* 194 Wash. 515, 78 P. (2d) 600; *Moffitt v. Goldcamp,* 195 Wash. 75, 79 P. (2d) 695.

We conclude that the relator was convicted of a crime which constituted a violation of his official oath and a malfeasance in office, and therefore the judgment of ouster was entirely proper.

The judgment is affirmed.

BLAKE, C. J., BEALS, MILLARD, and GERAGHTY, JJ., concur.