[No. 29529.   *En Banc.*   April 20, 1945.]

MERRITT SCHOOL DISTRICT NO. 50 *et al., Respondents, v.*
CHESTER C. KIMM, *as Superintendent of Schools
of Chelan County, Appellant.*[1]

[1]Reported in 157 P. (2d) 989.

*Harvey F. Davis* and *Crollard & O'Connor,* for appellant.
*Robertson & Smith* and *J. A. Adams,* for respondents.

SIMPSON, J.—Plaintiffs instituted this action to restrain defendant, as county school superintendent, from attaching Merritt and Winton school districts to the Leavenworth school district. The cause, tried to the court, resulted in the entry of a decree permanently enjoining the county school superintendent from disorganizing the Merritt and Winton districts and attaching them to Leavenworth district. Defendant appealed to this court and now contends that the trial court erred "in issuing the injunction."

The facts of this case, undisputed in the main, may be stated as follows: Merritt and Winton districts are of the third class, with no high school. Leavenworth is a third-class district and has a high school. Winton is thirteen and a half miles from Leavenworth, and Merritt is six and a half miles beyond Winton. The travel route from Leavenworth to Merritt and Winton is over a road that runs through Tumwater canyon. During the month of December, 1941, an election was held in Merritt, Winton, Lake Wenatchee, and Leavenworth school districts to approve or reject a proposal of the Chelan county committee for the reorganization of the school districts. The proposed plan was made in accordance with the provisions of Laws of 1941, chapter 248, p. 833, Rem. Supp. 1941, §§ 4709-1 to 4709-15, inclusive. The result of the election was as follows:

|  | For | Against |
|---|---|---|
| "Merritt District | 0 | 10 |
| Winton District | 1 | 11 |
| Lake Wenatchee District | 11 | 8 |
| Leavenworth District | 36 | 29 |
| Totals | 48 | 58" |

Thereafter, a new or revised plan was adopted by the committee, which included the Merritt, Winton, and Leavenworth districts. The latter plan was not submitted to

a vote of the people, but was adopted by the county school superintendent after a public hearing was had, at which the people living in the Winton and Merritt districts were largely represented and objected to the consolidation of the districts. After the hearing, the superintendent certified that the three districts should be united. The final action of the county school superintendent was taken under authority of Rem. Rev. Stat., § 4727 [P. C. § 4919], which gives the superintendent the authority after a hearing to consolidate third- and second-class school districts.

Respondents then prosecuted this action. There was some contention made by respondents that appellant did not have the authority under our legislative acts to take any steps to consolidate the districts after the proposition was defeated at the election. We will assume, without deciding, that appellant was correct in his procedure.

The trial court based its decision, as indicated in a well-considered memorandum opinion, upon evidence which showed that the appellant was not justified in his action of consolidating the school districts. This evidence, as pointed out by the trial court and as shown by the record, presented the following facts: The children from Merritt and Winton districts, if a consolidation was had, would be compelled to go to school at Leavenworth by school bus over the Tumwater canyon road. The road is bounded on one side by the Wenatchee river and on the other by a high mountain with steep sides. This road during the winter months was rendered dangerous by ice, snow, and slides. · Typical of the evidence showing the dangerous condition of the highway is the following testimony of William E. Doyle:

"Q. Will you tell us what has been the prevailing conditions in the winter months on that highway, Tumwater, we will say from October 1st to March 15th? Or say October 1st to April 1st: What are the actual conditions prevailing on that nine miles of road during that period? A. It is very dangerous. It is slick and icy. There is nearly always ice on the road, the full length of the canyon. It is sanded, to a certain extent, but not at that time in the morning. At the time the school bus goes out in the morn-

ing, there is very seldom sand in that canyon, and in heavy snow I have seen several days that you wouldn't get the length of the canyon by noon with the plough. Q. And in the spring season, starting the middle of February on, what happens there in that nine-mile stretch, when the thaws start? A. There are times it is closed two or three weeks, with rock or snow slides. Q. In fact, there is at present a slide which occurred last spring, and hasn't been removed? A. Yes, there is one that has been there approximately four months, that hasn't been removed. It takes about half the road. Q. It has about half the road covered, even at this time? A. Yes. Q. What period of the time, approximately, during those winter months would that road, you say, be closed to travel in the morning hours, between 7:30 and 9:00 o'clock, when the bus would have to operate up and down there with school children? A. Well, there are different conditions there. You take last winter, there wasn't so many days; but a year ago last winter there was, oh, possibly—I don't know—five or six days a month. Q. You couldn't get through? A. You couldn't get through until the ploughs went out. Q. You remarked a while ago, there were many days it wouldn't be ploughed open until noon. How many days would there be like that, that you would have to wait until noon to get through, approximately? A. Oh, approximately seven or eight days in a winter. Q. And the rest of the time, you say, it is icy and dangerous for travel in the morning hours? A. Yes. Q. Do you, yourself, know, Mr. Doyle, that the Great Northern Railway Company abandoned that route as a railway route, and rebuilt their route up Chumstick and around Beever Creek area? A. Yes, sir. Q. Several years ago, to avoid that slide condition? A. (Nod). Q. What, in your opinion, in view of your knowledge of the physical conditions up there during the winter months, in your opinion would it, or would it not, be safe for small school children to have to traverse that highway every school day of the year, in the wintertime? A. It is not safe for anybody to travel. . . ."

But one witness was called by the appellant, and he stated that he "would rather not" have a child of his go up and down the canyon road in January and February at eight o'clock in the morning.

It is our conclusion that the trial court was entirely correct in holding that the Tumwater canyon high-

way was "dangerous and unsafe to travel during much of the winter," and that the action of appellant was unreasonable and arbitrary. The rule to be followed in cases of this character is indicated in the annotation, 65 A. L. R. 1531, where it is stated:

"The wide discretion which administrative officers possess in changing the boundaries of school districts must be exercised in good faith for the best interests of the people of the districts affected, upon terms that are just and equitable, and which do not cause unnecessary hardship; and, if exercised in such a fraudulent, arbitrary, or unreasonable manner as to constitute an abuse of discretion, the courts will interfere in behalf of the districts or voters injured thereby."

Discretion implies knowledge and prudence and that discernment which enables a person to judge critically of what is correct and proper. It is judgment directed by circumspection. The discretion given by law to certain individuals, such as appellant in this case, does not mean that they have a power of free decision or that they may pursue an undirected course. The discretion is one regulated by well-known and established principles of law and equity. It must be legal and regular, exercised in the spirit of reason and not ruled or governed by humor.

In *In re School Dist. No. 61 of Lincoln County*, 139 Wash. 11, 245 Pac. 1118, this court affirmed the judgment of the superior court, which had reversed an order of the school superintendent who had disorganized one school district and divided it between three other districts. The reversal was grounded upon the fact that, if the district be disorganized, the people in the old district would be unable to send their children to school a substantial portion of the year on account of weather and road conditions. Accord: *In re Chicago, M. & St. P. R. Co.*, 134 Wash. 182, 235 Pac. 355.

We are unable to find any reasonable ground upon which the appellant may justify his action. The only available road to and from the Leavenworth school was very dangerous during the winter months. That road was ex-

tremely dangerous in the early mornings at the time the children had to start to school. This was due to the fact that the sun had not melted the ice and snow upon the road and the highway department was unable to clear the roadway before the school bus had to travel over it. The appellant abused his discretion in consolidating the Winton, Merritt, and Leavenworth school districts and cannot be sustained.

Judgment affirmed.

ALL CONCUR.