ELMER DANIELSON, *Appellant,* v. MARY A. FAYMONVILLE
*et al., Respondents.*\*

\*Reported in 435 P.2d 963.

*Dysart, Moore & Tiller, John R. Lewis, J. T. Moore,* and *Laurel L. Tiller,* for appellant.

*Arthur H. Reed,* for respondents.

HUNTER, J.—The plaintiff (appellant), Elmer Danielson, instituted this action seeking to restrain the defendants (respondents) from preparing and circulating petitions for plaintiff's recall from his official capacity as commissioner of Public Utility District No. 1 of Wahkiakum County. This appeal is from the trial court's order denying relief and dismissing plaintiff's complaint with prejudice.

The facts are undisputed. Plaintiff was elected public utility commissioner in 1964 to fill an unexpired term. He won reelection in 1966 for a term of 6 years. On December 29, 1966, the individual defendants filed a petition with the defendant auditor charging the plaintiff with misfeasance, malfeasance and violation of his oath of office, as follows:

1. That said Elmer Danielson did, while a duly elected officer and Public Utility District Commissioner, as aforesaid, actively circulate petitions to establish an independent water district and system for the residents of Puget Island, Wahkiakum County, while said Elmer Danielson was under duty as said Public Utility District Commissioner to conduct and operate an existing water system for said citizens in Wahkiakum County. That said action by Elmer Danielson was contrary to his duty as a Public Utility District Commissioner in that such conduct in sponsoring an independent water district was in conflict with his duty to operate and maintain the existing water system operated by said Public Utility District and in competition therewith.

That said Elmer Danielson after his re-election as said Commissioner in November, 1966, did continue to attempt to establish an independent water system for the citizens of Puget Island, Wahkiakum County, Washington, and to this date does continue to agitate for and attempt to establish such independent water system which was and is a violation of his duty as said Public Utility District Commissioner in that such conduct in sponsoring, agitating for, and urging the establishment of an independent water system is in conflict with his duty to operate and maintain the existing water system opera-

ted and maintained by said Public Utility District and in competition therewith.

2. That while acting as said Public Utility District Commissioner, Elmer Danielson did sign a resolution for the borrowing of the sum of $3,000.00 from the electric department of the Public Utility District to be used to extend service of the existing water system operated or supervised by said Public Utility District to additional customers. That said sums were spent towards said purpose upon work orders and authorizations signed by said Elmer Danielson, without completion or making any effort to complete said extended service. That said Elmer Danielson, as Public Utility District Commissioner signed a resolution repealing the authorization of the completion of said project without explanation or provision for how said sums would be repaid or paid back to the Public Utility District, such conduct being contrary to the interest of said Public Utility District and a wasteful dissipation of public funds of said Public Utility District. That as said Public Utility District Commissioner, Elmer Danielson, in violation of his duties and obligations as Public Utility District Commissioner, has neglected and refused to take any steps to provide for the repayment of said funds back into the Public Utility District electric fund, to complete the work of extending water service, commenced as aforesaid and continues such conduct that is contrary to the interest of said Public Utility District and a wasteful dissipation of public funds of said Public Utility District.

3. That said Elmer Danielson, as Public Utility District Commissioner, has been negligent and guilty of malfeasance in knowingly employing an incompetent, inexperienced and unsuitable person as manager of said Public Utility District, contrary to the interest and efficient operation of the Public Utility District.

4. That said Elmer Danielson as Public Utility District Commissioner has been guilty of misfeasance and malfeasance and violation of his oath of office in that at public meetings at which legal voters of Wahkiakum County appeared, particularly during the month of December, 1966, did arrogantly refuse to answer proper questions put to him by voters regarding the financial and business affairs of the Public Utility District, and did, without reasonable cause or excuse refuse to attempt to negotiate a proper and reasonable agreement with the Town of

Cathlamet for perpetuation of and proper, economical and beneficial improvement of existing water service for the citizens of Puget Island, Wahkiakum County, Washington, and did arbitrarily and capriciously refuse to consider citizen voters petitions and requests in the premises, all to the loss, distress and detriment of Public Utility District No. 1 of Wahkiakum County, Washington, and the citizens residing therein.

This action was commenced on February 1, 1967, after preparation of the ballot synopsis by the county auditor and partial circulation of the petitions based thereon, RCW 29.82.030, but prior to the canvassing of these petitions. At a hearing on whether an injunction should issue restraining the further circulation and canvassing of the petitions, the plaintiff argued that the charges made were insufficient in law to justify his recall, and that the allegations in the original charges were too indefinite to give him adequate notice of the acts which he was supposed to defend.

The trial court limited its review to the determination of the legal sufficiency of the original charges and ruled that two of the four charges listed (two and three) were insufficient to warrant recall. The court did hold, however, that the remaining two charges (one and four) were sufficient, if taken to be true, and met statutory requirements of definiteness.

Dismissal of the complaint followed and canvassing of the recall petitions was held as scheduled with a sufficient number of signatures found. The petitions were then certified and on March 20, 1967 the recall election was set for April 27, 1967. On March 23, 1967, the plaintiff obtained from this court an order staying the recall election until an appeal from the order of dismissal could be reviewed. This appeal was then set by us for hearing as an emergency matter of public concern. No cross-appeal has been taken by the defendants to any of the trial court's rulings.

The defendants contend that the plaintiff's action was not properly filed within 10 days from the time the cause of complaint arose, as required by RCW 29.82.160, and his attempt to restrain further recall proceedings is

therefore untimely. Our examination of the authorities cited reveals that while the plaintiff is untimely in terms of having excluded from the recall ballot any of the charges originally filed and placed on the ballot synopsis, *Morton v. McDonald,* 41 Wn.2d 889, 252 P.2d 577 (1953), the 10-day requirement of RCW 29.82.160 does not preclude the plaintiff from showing at this point the complete failure of all of the charges, as a matter of law, to justify the enjoining of the recall election. The controlling rule was succinctly stated in *Morton, supra,* as follows:

> The rule is that, at this state of the proceedings, the recall petitions having been circulated, signed, and canvassed, only the complete failure of all of the charges to meet the statutory requirements can justify enjoining the holding of the election; one charge meeting the statutory requirement is sufficient. *Thiemens v. Sanders,* 102 Wash. 453, 173 Pac. 26 (1918); *State ex rel. Walter v. Houghton,* 165 Wash. 220, 4 P. (2d) 1110 (1931); *People ex rel. Elliot v. O'Hara,* 246 Mich. 312, 224 N. W. 384 (1929); *Amberg v. Welsh,* 325 Mich. 285, 38 N. W. (2d) 304 (1949).

The plaintiff contends that the charges held legally sufficient by the trial court fail to meet minimal requirements for the commencement of the recall process; because the charges are too indefinite and vague to enable a person of common understanding to know what is intended. He argues that to be sufficient, the charge must be set out in language as specific and definite as that of a criminal information.

■ The plaintiff's argument that the language of the charge must be as definite as that of a criminal information has already been considered by this court in *Gibson v. Campbell,* 136 Wash. 467, 241 Pac. 21 (1925), and found only to apply where removal of a public officer is by judicial proceeding. Recall charges need only contain a statement of the acts complained of, with sufficient definiteness that the one charged may be able to meet them before the tribunal of the people. As we stated in *Gibson:*

> In all well reasoned cases from practically every jurisdiction involving a proceeding to remove a public officer

by judicial proceedings, it has been held that the charges should be concise and practically with the same definiteness as required in criminal charges. These cases are not necessarily controlling in the present case, for the reason that the recall was adopted by the people of the state for the express purpose of allowing them to remove their officials at will, and for any cause which was by them deemed sufficient, and we think that, in carrying out the salutary purposes intended in the adoption of the recall, the provisions of the statute [RCW 29.82.100] should be liberally construed.

Directing our consideration to the first charge, *supra,* when liberally construed we think it is sufficiently definite to apprise the plaintiff of the charges against him so that he may defend his actions before the people.

Plaintiff contends, however, that should this charge be considered sufficiently definite in form, it is, nevertheless, insufficient in law to warrant recall; since admitting the truth of the allegation, it does not constitute misfeasance, malfeasance, or a violation of the oath of office.

■ This determination whether the petition alleges acts legally sufficient to warrant a recall election depends upon whether any one of the acts described, which we must assume to be true, *Skidmore v. Fuller,* 59 Wn.2d 818, 370 P.2d 975 (1962), constitutes misfeasance, malfeasance, or violation of an official's oath of office. RCW 29.82.010, Const. art. 1, § 33.

■ Misfeasance or malfeasance (often stated as maladministration, misconduct, official misconduct, nonfeasance, or misbehavior in office), have been held to be comprehensive terms and include any wrongful conduct that affects, interrupts, or interferes with the performance of official duty. *State ex rel. Knabb v. Frater,* 198 Wash. 675, 89 P.2d 1046 (1939); *State v. Miller,* 32 Wn.2d 149, 201 P.2d 136 (1948). Violation of an official's oath of office has been described to mean the failure of the officer to perform his duties of office honestly, faithfully, and to the best of his ability. *Huntamer v. Coe,* 40 Wn.2d 767, 772, 246 P.2d 489 (1952).

A public utility district commissioner, by his oath of office, is bound to faithfully and impartially perform the duties of his office. RCW 54.12.100. By necessary implication, faithful and impartial performance requires a commissioner to operate and maintain the district he has been elected to manage to the best of his ability for the benefit of the people whom the district serves. Deeming the charges in the first charge of the petition to be true, as we must, for a commissioner *in office to advocate the establishment of an independent water district, in competition with the existing public utility facility,* is patently inconsistent with his duty to faithfully operate and maintain the water facility of the district; since the establishment of a competing water district in the same area being served by the water system of the public utility district would lead to a loss of customers, reduced revenues, and would affect the financial stability of the district. The petition, therefore, on its face, charges misconduct in office amounting to misfeasance, malfeasance, or violation of an official's oath of office.

Since we find that the first charge in the petition is sufficient, as a matter of law, to warrant proceeding with the recall election, we need not consider the remaining charges in the petition. *Morton, supra.*

The judgment of the trial court is affirmed and our order of March 23, 1967, staying the recall election, is set aside.

ROSELLINI, HAMILTON, and HALE, JJ., concur.

ROSELLINI, J. (concurring)—I agree with the majority that the causes for recall are stated with sufficient definiteness to meet the requirements of RCW 29.82.010. I am also of the opinion that the voters could well find that the acts complained of constitute misfeasance or malfeasance of such a serious nature as to warrant the recall of the commissioner. Read as a whole, the charges assert that there has been an unmistakable tendency on the part of the plaintiff to undermine and sabotage the PUD in violation of his duty as an elected officer of the PUD to support it and to act in its best interests.

In the recent case of *Skidmore v. Fuller,* 59 Wn.2d 818, 824, 370 P.2d 975 (1962), wherein we examined a petition for the recall of certain directors of a school district which asserted that the directors had sought to undermine confidence and trust in teachers who were members of the Washington Education Association, we said:

> If this charge is true, it would patently show that the members of the board had deliberately done acts which were not in furtherance of the interests of education in their district and had violated their oaths of office. *It is for the voters to decide whether the charge is true and whether they deem it serious enough to demand the recall of the directors.* (Italics mine.)

Also, in that case, we quoted the following significant excerpt from the case of *Cudihee v. Phelps,* 76 Wash. 314, 330-31, 136 Pac. 367 (1913):

> ". . . While it seems true that, under this constitutional provision [Const. art. 1, § 33 (amendment 8)], an officer is to be removed for cause only; yet, the question being purely a political one, . . . it is manifest that the tribunal before which the sufficiency of the cause is to be tried is that of the people. It may be that the courts have jurisdiction to determine the sufficiency of the statement of the allegations made as cause for removal if presented in a proper proceeding involving the question of the calling of the election, but the trial of the question of whether such cause actually exists, and as to whether the officer shall be discharged, is to be had before the tribunal of the people and decided by them at the polls. It is not the trial of a question of life, liberty, or property; hence there is not involved any question of due process of law . . ."

For this reason, it seems to me that this court should limit itself to examining the charge to see if it is definite enough to apprise the plaintiff of the charges against him so that he may defend his actions before the people. The question whether the charge is serious enough to warrant his recall should be left to the voters to decide, inasmuch as the matters alleged are not patently frivolous on their face. The voters could well find, if they find the charges true, that their utility district would be better served by recall-

ing the plaintiff and replacing him with a commissioner having a more positive and enthusiastic attitude about the enterprise. The resolution of this question being a political matter, this court should carefully refrain from substituting its judgment for that of the people.

FINLEY, C. J., concurs with ROSELLINI, J.

HILL, J. (dissenting)—I dissent.

Amendment 8 added the recall provision to our state constitution, contained in sections 33 and 34 of article 1. Section 33 states what the petition for the recall of an elective public officer shall contain. It must recite,

> [T]hat such officer has committed some act or acts of malfeasance or misfeasance while in office, or . . . has violated his oath of office, stating the matters complained of . . . .

The implementing statute is chapter 29.82. The section dealing with the charges which make a public officer subject to recall is RCW 29.82.010. The charge must state that he has

> [C]ommitted an act or acts of malfeasance, or an act or acts of misfeasance while in office, or has violated his oath of office, or has been guilty of any two or more of the acts specified in the Constitution as grounds for recall,[1] which charge shall state the act or acts complained of in concise language, without unnecessary repetition . . . .

The majority opinion sets forth in haec verba the "matters complained of." It is necessary to find in that melange of disagreement, disapproval, and disgruntlement an act or acts of misfeasance, malfeasance, or a violation of his oath of office[2] by Mr. Danielson (the plaintiff-appellant herein), if the recall petition is to be deemed sufficient.

---

[1] The significance of the clause "or has been guilty of any two or more of the acts specified in the Constitution as grounds for recall" is not clear, as the statute has already stated the three grounds of malfeasance, misfeasance, and violation of oath of office designated in the constitution.

[2] "Each commissioner before he enters upon the duties of his office shall take and subscribe an oath or affirmation that he will faithfully and impartially discharge the duties of his office to the best of his ability. . . ." RCW 54.12.100.

Initially it should be noted that he is not charged with dishonesty, corruption or any neglect of the statutory duties which have been imposed upon him. The majority has had to stretch the conception of misfeasance, malfeasance, or violation of oath of office beyond anything we have heretofore conceived as being included in those terms.

From the first charge, the one which the majority has found to be sufficient, it appears that Mr. Danielson has advocated that those residents of Public Utility District No. 1 of Wahkiakum County residing on Puget Island might be better served by organizing a water district of their own. This they have the undoubted right to do (RCW 54.16.180). If the plan he advocates is not in the best interest of the voters in that area, they need only reject it.

It may be lese majesty to suggest to the residents of a particular area (such as Puget Island) that they can be better served by a water district of their own than by Public Utility District No. 1 of Wahkiakum County, but I submit that it is neither misfeasance, malfeasance, nor a violation of his oath of office for Mr. Danielson to advocate that one area in a public utility district can be better served by organizing a water district of its own. If Mr. Danielson is incorrect, the respondents here are free to point out the errors in his advocacy in the election necessary to form such a district.

Actually on the first charge, the complaint against Mr. Danielson amounts to no more than that he has exercised his constitutionally guaranteed right of free speech.

The majority is saying that a public official lays the foundation for a recall by recommending to the voters of any section of his district that they should consider a change in structure in the event such change would diminish the functions of the agency he was elected to serve. A school director could face a recall election, if he should recommend that the district be divided; and a county commissioner who advocated the incorporation of part of the

county as a city or town would have the Damoclean sword of recall hanging over his head.

I cannot agree that such advocacy should be categorized as "wrongful conduct that affects, interrupts, or interferes with the performance of official duty" (quoting the majority opinion), nor can the advocacy of Mr. Danielson of the creation of a water district on Puget Island be so categorized in the present case. It is a far cry from my concept of misfeasance, malfeasance, or a violation of his oath of office (to quote the constitution).

However, a dissent in this case must do more than disagree with the majority as to the sufficiency of the first of the four charges; for, as pointed out in the majority opinion, if any one of the four charges is sufficient to warrant a recall the election must be held. *Morton v. McDonald,* 41 Wn.2d 889, 252 P.2d 577 (1953). The second and third charges were held insufficient by the superior court, and there has been no appeal from that holding.

The fourth charge appears on page 846 of the majority opinion, and charges that Mr. Danielson: (1) "arrogantly" refused to answer questions at public meetings; and "arbitrarily and capriciously" refused to consider "citizen voters petitions and requests"; (2) refused to attempt to negotiate an agreement with the town of Cathlamet.

As to (1), his conduct may have been politically inept and imprudent, but it does not constitute misfeasance or malfeasance; neither is there any violation of his oath of office.

As to (2), his refusal to negotiate an agreement could not prevent its negotiation, if the other two commissioners desired to negotiate. This charge seems completely immaterial.

It is my view that there is nothing in the portion of the recall petition now before us for review that constitutes misfeasance, malfeasance by Mr. Danielson, or a violation of his oath of office.

I would reverse the judgment appealed from and enjoin the recall.

DONWORTH, WEAVER, and NEILL, JJ., concur with HILL, J.

February 29, 1968. Petition for rehearing denied.