[No. 39965.    Department One.    March 5, 1968.]

THE STATE OF WASHINGTON, *on the Relation of Edward G. LaMon, Respondent,* v. THE TOWN OF WESTPORT *et al., Appellants.*\*

\*Reported in 438 P.2d 200.

*Burtch & Espedal,* by *B. Rolf Espedal,* for appellants.

*Ross & Schweinler* and *Lawrence M. Ross,* for respondent.

EVANS, J.†—July 19, 1967, Edward G. LaMon and Larry Harshberger delivered to Leona L. Love, the clerk-treasurer of the town of Westport, a notarized document entitled "PETITION TO RECALL MAYOR BYRON CRAMER." The document recited that LaMon and Harshberger were legal voters of the town of Westport, and that they were charging Mayor Cramer with having

[C]ommitted an act or acts of malfeasance while in office, and has violated his oath of office and has been guilty of two or more of the acts specified in the constitution, as grounds for recall in the following particulars:

1. That on or about the 10th day of July, 1967 Byron Cramer, as Mayor of the Town of Westport, Washington, appointed and allowed Tony McClendon to act as Town Clerk when he knew or in the exercise of good judgment should have known that said Tony McClendon was not qualified or able to discharge the duties of that office.

2. That on or about the 14th day of July, 1967 Byron

---

†Judge Evans is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Cramer as mayor appointed Glen Edwards to be in charge of the water system when he knew or should have known that said Glen Edwards was not qualified or able to discharge said duties.

3. That on or about the 10th day of July, 1967 Byron Cramer as mayor appointed Everett Roman to act as Town Marshall when he knew or in the exercise of good judgment should have known that the said Everett Roman was not qualified or able to discharge the duties of that office.

4. That on or about the 6th day of December, 1966 Byron Cramer, acting as Mayor of the Town of Westport, issued a directive requiring all councilmen acting as committee members to submit written requests to the mayor for work to be done, knowing that said directive was contrary to Ordinance 104 of the Town of Westport, adopted on or about the 6th day of January, 1939.

August 1, 1967, LaMon applied for a writ of mandate because the town clerk had failed to act on his petition. On that date, the superior court issued an "Alternative Writ of Mandamus" directing the town, the mayor, and the clerk to prepare a ballot synopsis and to cooperate with LaMon according to the law regarding recall elections. August 4, 1967, the town and the mayor moved to quash the "Alternative Writ," and on August 8, 1967, Leona L. Love, as clerk-treasurer, executed and delivered to LaMon a document in which she stated that on the advice of counsel she declined to prepare a synopsis for the reason that the charges were legally insufficient to invoke the provisions of the recall statute.

Thereafter, the cause came on for hearing before visiting Judge Morrell E. Sharp (the two judges of the county having previously disqualified themselves) but, because Leona L. Love, the town clerk-treasurer, had filed an affidavit of prejudice, the cause was continued until August 22, 1967, when it was heard before visiting Judge George R. Stuntz. September 1, 1967, a memorandum opinion was signed by Judge Stuntz, and, on September 20, 1967, findings of fact and conclusions of law were entered. The trial court found that charges 1, 2, and 3 were legally sufficient

to invoke the provisions of the recall statute and directed that a writ of mandamus be issued requiring the "present Town-Clerk-Treasurer . . . to prepare and deliver forthwith . . . a ballot synopsis . . . and . . . [to] proceed as set out in RCW 29.82. . . . "

From the entry of the order and judgment, the town of Westport and Leona L. Love and her successor in office appeal.

Appellants first assign error to the trial court's failure to dismiss the cause for failure of proof. Appellants contend that respondent failed to prove an essential element of his case in that it was not established by competent evidence that LaMon and Harshberger were legal voters of the town of Westport. RCW 29.82.010 requires that at least *one* legal voter of the political subdivision verify under oath the statement by which the recall proceedings are initiated. At the hearing, appellant Love was called as an adverse witness by respondent. She testified that LaMon had come into her office before the "petition" had been served on her and that she had personally registered him as a voter. Mr. Harshberger testified on his own knowledge that he, too, was a registered voter in the town of Westport. This testimony was uncontradicted by appellants. We find no merit in this assignment of error.

Appellants next assign error to the trial court's determination that the "petition" stated charges which were legally sufficient to invoke the provisions of the recall statute. Appellants contend that it failed to specify how the mayor was derelict in his duties and in what manner the appointed officials were unqualified. Appellants further contend that the charges must be as definite as in a criminal information.

RCW 29.82.010 requires that the charge shall recite that the elected official

[H] as committed an act or acts of malfeasance, or . . . misfeasance . . . or has been guilty of any two or more of the acts specified in the Constitution as grounds for recall, which charge shall state the act or acts complained of *in concise language* . . . . (Italics ours.)

■■■ The inquiry on review is not into the truth or falsity of the charges, but whether the charges, if true, state legally sufficient grounds for invoking the recall provisions. *Skidmore v. Fuller,* 59 Wn.2d 818, 370 P.2d 975 (1962). As we have previously stated in a similar context, the terms "malfeasance" and "misfeasance" are comprehensive terms which include any wrongful conduct affecting the performance of official duties. See *State v. Miller,* 32 Wn.2d 149, 201 P.2d 136 (1948); *State ex rel. Knabb v. Frater,* 198 Wash. 675, 89 P.2d 1046 (1939). Where removal from public office is sought to be achieved by judicial proceedings, the charges must be as definite as a criminal information, but where, as here, removal is sought through a recall election, the charges need only be sufficiently definite to allow the official so charged to meet them before the tribunal of the people. *Danielson v. Faymonville,* 72 Wn.2d 854, 858, 435 P.2d 963 (1967); *Gibson v. Campbell,* 136 Wash. 467, 478, 241 Pac. 21 (1925).

■■■ In the instant case the charges found by the trial court to be sufficient all recited that the mayor appointed a named official who was unqualified or unable to discharge official duties. Appellants concede that this court held, in *Morton v. McDonald,* 41 Wn.2d 889, 892, 252 P.2d 577 (1953), that such a charge was sufficient,[1] but argue that such a rule makes an elected official too readily amenable to recall. In effect, appellants challenge the political wisdom of the recall provisions. Although for students of government there may be some room for academic discourse on this matter, the people have, through the constitution, validly determined that the powers of the governing shall be so limited. See *Cudihee v. Phelps,* 76 Wash. 314, 136 Pac. 367 (1913). We adhere to our holding announced in *Morton, supra.*

Appellants' remaining assignment of error relates to an

---

[1]Indeed, from what appears in the *Morton* case, the charges in the instant case are even more specific. It should also be noted that the defects found to be fatal in *Gibson* are not attendant here. In *Gibson,* the court was concerned with the failure of the charges to specify dates of the alleged acts.

incident which occurred at the outset of the July 22, 1967 hearing. At that time, the following transpired:

The Court: . . . There is a motion and affidavit for a change of Judge, which was filed this morning, and it isn't filed by an attorney, but it is filed by Mr. McClendon, individually.

Mr. Charette: Your Honor, if I may be heard. I may be able to take care of that.

The Court: Now wait just a minute! I want to find out, Mr. Attorney, did you prepare this affidavit for change of Judge for Mr. McClendon?

Mr. Duree: No, I didn't prepare the motion and affidavit, your Honor. Mr. McClendon did consult with me and asked me.

The Court: No, but did you do it in your office? It looks like the same typewriter.

Mr. Duree: Mr. McClendon typed it in my office, your Honor. He came to me and asked me if he could, and I advised him of the statute to take a change of Judge, and I advised him I was not representing him and that he was not a proper party to this action.

. . . .

Mr. Charette: Your Honor, Mr. McClendon was never served with the papers in this action. Although he was named he was not served. If he were served inadvertently, if he got copies of the papers, I have got no affidavit. I move to dismiss him out of the action.

. . . .

The Court: Granted. He is not a proper party. All right. Proceed.

Appellants urge that it was error for the trial court to try the cause in that the filing of the affidavit of prejudice automatically divests the trial court of jurisdiction, and that, in any event, it was error for the trial court to go behind the affidavit and inquire into the facts.

■■ We agree that it was error for the court to inquire into the facts. This is so even though the affiant was clearly subject to the motion to dismiss him from the cause on the grounds urged and relied upon. Only the official vested with the statutory duty to prepare the synopsis (Miss Love or her successor) has an interest in litigation of

this nature. See RCW 29.82.020. Nevertheless, McClendon, albeit erroneously, was named by appellants in the application for the writ of mandate, and, although he was never served with process, his voluntary physical presence in the courtroom vested the trial court with in personam jurisdiction over his person. See *State ex rel. LaFollette v. Hinkle*, 131 Wash. 696, 229 Pac. 320 (1924). Although the record does not so indicate, it is not unreasonable to assume that McClendon appeared to ensure that no judgment would be entered against him, or, perhaps he appeared to challenge the want of service itself. He, like any party more properly before the court, was entitled to challenge the impartiality of a judge who might be called upon to make a ruling as to his status in the litigation. The fact that the trial court may have granted what McClendon desired does not retroactively undo the error. It is undisputed that the ruling of the trial judge on the motion of respondent to dismiss McClendon occurred *after* the affidavit of prejudice had been properly filed. This was in contravention of RCW 4.12.040 and 4.12.050.

■ It is not every error that is reversible error, however. In the instant case the error complained of, as the colloquy set out above demonstrates, was concurred in, or at least acquiesced in, by appellants. Furthermore, McClendon himself offered no objection and, more important, he has not sought review of the measures taken by the trial court. Appellants agreed in open court that McClendon was an improper party, and appellants offered no objection either when McClendon was dismissed from the action or when the trial court proceeded to hear the cause on the merits. Therefore, unless, as the appellants contend, the error went to the jurisdiction of the court to hear and try the cause—since it was unique to the nonappealing party, and since the appealing party participated in that error and offered no objection or exception—it cannot properly be the basis upon which to predicate reversal. See *Quackenbush v. State*, 72 Wn.2d 670, 672, 434 P.2d 736 (1967); *Seattle v. Harclaon*, 56 Wn.2d 596, 597, 354 P.2d 928 (1960); *Blouen v. Quimpere Canning Co.*, 139 Wash. 436, 438, 247 Pac. 940

(1926); *Lemcke v. A. L. Funk & Co.*, 78 Wash. 460, 468, 139 Pac. 234 (1914); *Clallam Cy. v. Clump*, 15 Wash. 593, 594, 47 Pac. 13 (1896); *Mahncke v. Tacoma*, 1 Wash. 18, 19, 23 Pac. 804 (1890).

■ In *Bode v. Superior Court*, 46 Wn.2d 860, 863, 285 P.2d 877 (1955), we said that a properly filed affidavit and motion for a change of judge entitles the affiant, as a matter of right, to such a change. We also said that "[t]he motion for change of judge and the affidavit of prejudice directed to the judge do not, however, question jurisdiction of the court." In the present case, the affidavit of prejudice filed by McClendon did not question the jurisdiction of the court, but objected only to the right of the trial judge as a person to hear the matter then before the court. It is true that, as appellants point out, we have also referred to this "right" as "jurisdictional." See *In re McDaniel*, 64 Wn.2d 273, 275, 391 P.2d 191 (1964). In *McDaniel* we were improperly using the term "jurisdiction," for that term, in its juridical and traditional sense, refers to the abstract power of the court to hear and determine the cause. *Alberta Lumber Co. v. Pioneer Lumber Co.*, 138 Wash. 132, 138-139, 244 Pac. 250 (1926). The statutory "right" to a change of judge is a matter of personal privilege, and, although the "right" is to be scrupulously guarded, the question of the court's power to hear and determine is not involved.

The order and judgment of the trial court are affirmed.

FINLEY, C. J., WEAVER, NEILL, and McGOVERN, JJ., concur.