[No. 50917–4. En Banc. December 26, 1984.]

GRACE COLE, ET AL, *Appellants,* v. GEORGE R. WEBSTER, ET AL, *Respondents.*

*John J. Keough* (of *Keough & Mallett*), for appellants.

*MacDonald, Hoague & Bayless,* by *Harold H. Green,* for respondents.

PEARSON, J.—This case involves a recall petition filed against members of the Shoreline School Board. The issue presented is whether the charges propounded in the petition allege sufficient grounds for recall. The trial court, pursuant to RCW 29.82, as amended by Laws of 1984, ch. 170, conducted a hearing to determine the sufficiency of the charges and adequacy of the ballot synopsis and concluded that charges 1, 2, 4 and 5 were sufficient. We hold that charges 1 and 2 are legally insufficient, charges 4 and 5 are factually insufficient and the trial judge should have allowed voir dire examination of the recall petitioners to ascertain whether they had sufficient knowledge of the facts alleged in the charges.

The facts in this case are clear. In early 1984 Shoreline School District 412 began considering its long–range facility utilization plan. On May 7, 1984, the superintendent of Shoreline School District filed an initial plan recommending in part the closure of Shoreline High School and two elementary schools. Thereafter hearings were held pursuant to RCW 28A.58.031 to discuss the closures. On June 4, 1984, the superintendent made his final recommendations, including the closures outlined above. Thereafter, the school board, after making a few modifications, approved the plan including the closure of Shoreline High School and the two elementary schools.

On July 30, 1984, George R. Webster and Donald La–Verne LaMontagne filed recall petitions against the five elected board members of Shoreline School District 412. The charges were essentially as follows: All five members were charged with wasting taxes when they voted to close Shoreline High School and renovate Shorecrest High School which was located on leased land. A similar allegation was made concerning the two elementary schools. The members were charged with improperly withholding minutes of school board meetings from the public. A fourth

charge asserted participation in a meeting in violation of the Open Public Meetings Act of 1971, RCW 42.30. The fifth charge asserted the Board had retained an incompetent superintendent.

Thereafter, pursuant to the new statutory provisions, the prosecuting attorney formulated ballot synopses and transmitted them to the Superior Court for approval and determination of the sufficiency of the charges. Laws of 1984, ch. 170, § 3, p. 823. On August 31, 1984, a hearing was held in the Superior Court for King County wherein the board members argued not only that the recall petitions were insufficient, but also that they had a right to voir dire the petitioners concerning their knowledge of the alleged charges. The Superior Court refused to allow the voir dire and found charges 1, 2, 4 and 5 sufficient, charge 3 insufficient and the ballot synopsis adequate. The school board members immediately appealed.[1]

 This case involves the interpretation of Washington's constitutional and statutory recall provisions. These provisions were recently analyzed in *Chandler v. Otto*, 103 Wn.2d 268, 693 P.2d 71 (1984), wherein this court held that the 1976 and 1984 amendments to the recall statute, RCW 29.82, clearly disclose an intent by the Legislature to limit the scope of the recall right to recall for cause and thereby free public officials from the harassment of recall elections grounded on frivolous charges or mere insinuations. As we indicated in *Chandler,* such a rule is consistent with the original intent of the framers of the constitution's recall provision. *Chandler,* at 271.

In *Chandler,* we held that a recall petition must be both legally and factually sufficient. *Chandler,* at 274. The opinion also states that discretionary acts of a public official are not a basis for recall insofar as those acts are an appropriate exercise of discretion by the official in the performance of his or her duties. *Chandler,* at 274. We believe this rule is applicable to the first two charges of wasting taxes in the

---

[1]Neither party appealed the trial court's finding concerning charge 3.

instant case.

██ Discretion implies knowledge and prudence and that discernment which enables a person to judge critically what is correct and proper. It is judgment directed by circumspection. *Merritt Sch. Dist. 50 v. Kimm*, 22 Wn.2d 887, 891, 157 P.2d 989 (1945); *Ledgering v. State*, 63 Wn.2d 94, 102, 385 P.2d 522 (1963). The Board's decision to close Shoreline High School and the two elementary schools was certainly a discretionary act. As stated by the United States Supreme Court:

> The construction of new schools and the closing of old ones are two of the most important functions of local school authorities and also two of the most complex. They must decide questions of location and capacity in light of population growth, finances, land values, site availability, through an almost endless list of factors to be considered.

*Swann v. Charlotte–Mecklenburg Bd. of Educ.*, 402 U.S. 1, 20, 28 L. Ed. 2d 554, 91 S. Ct. 1267 (1971); *see also* 16A E. McQuillin, *Municipal Corporations* § 46.07b, at 419 (3d rev. ed. 1984). The Board's decision clearly required judgment guided by knowledge, prudence and circumspection. In addition, the right to make such a decision is essential to the Board's satisfactory completion of the responsibilities entrusted to the school districts by the Legislature, RCW 28A.58.758, and is necessary to the fulfillment of the State's paramount duty to provide for public education. *See Seattle Sch. Dist. 1 v. State*, 90 Wn.2d 476, 585 P.2d 71 (1978).[2] We are therefore compelled to hold that the decision to close schools is a discretionary act and members of a school board cannot be recalled unless they arbitrarily or unreasonably exercised such discretion.

██ A clear abuse of discretion may be shown by dem-

---

[2]It should be noted that in 1983 the Legislature amended RCW 43.21C, exempting school closures from the State Environmental Policy Act of 1971, RCW 43.21C.038, and RCW 28A.58, requiring directors to adopt policies regarding school closures and provide for citizen involvement. RCW 28A.58.031. There is no dispute that the statute was complied with in the instant case.

onstrating the discretion was exercised in a manner which was manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *Wilson v. Board of Governors,* 90 Wn.2d 649, 656, 585 P.2d 136 (1978), *cert. denied,* 440 U.S. 960 (1979). We are unable to find any facts in the recall petition which might suggest that the school board exercised its discretion in a manner which was arbitrary, unreasonable or untenable. A general statement that public funds are being wasted is insufficient evidence of an abuse of discretion. *State ex rel. Citizens Against Mandatory Bussing v. Brooks,* 80 Wn.2d 121, 492 P.2d 536 (1972). Therefore, charges 1 and 2 must be dismissed on the grounds that they are legally insufficient.

■ It is also our conclusion that charge 4, alleging violation of the Open Public Meetings Act of 1971, RCW 42.30, and charge 5, retention of an incompetent superintendent, must be dismissed on the grounds that they are factually insufficient. The specificity requirements of RCW 29.82.010 mandate that the charges alleged in a recall petition taken as a whole state sufficient facts to identify to the electors and to the official being recalled, acts or failure to act which without justification would constitute a prima facie showing of misfeasance, malfeasance, or a violation of the oath of office. *Chandler,* at 274. *See Tolar v. Johns,* 147 So. 2d 196 (Fla. Dist. Ct. App. 1962); *see also Amberg v. Welsh,* 325 Mich. 285, 38 N.W.2d 304 (1949).[3]

These specificity requirements leave intact the inherent right of the people to recall elected officials for cause. Const. art. 1, §§ 33, 34 (amend. 8). The only burden is that recall must be based on specific and definite charges. This is not a cumbersome burden when one considers the

---

[3]The holding in this case was subsequently qualified in *Wallace v. Tripp,* 358 Mich. 668, 680–81, 101 N.W.2d 312 (1960), insomuch as the case requires that reasons for recall constitute allegations of nonfeasance, misfeasance or malfeasance in office. This holding was subsequently incorporated into article 2, section 8 of the 1963 Michigan Constitution. The qualification, however, relates to the legal sufficiency of the charges, not the factual sufficiency. *See Noel v. Oakland Cy. Clerk,* 92 Mich. App. 181, 284 N.W.2d 761 (1979).

harassment to which public officials can be subjected if charges need only be general in nature. Furthermore, the requirement is consistent with the fact that Washington's Constitution differs from most other states; it is the only constitution that allows recall only for cause. *See* Cohen, *Recall in Washington: A Time for Reform,* 50 Wash. L. Rev. 29 (1974). This distinction is well analyzed in 4 E. McQuillin, *Municipal Corporations* § 12.251b, at 334 (3d rev. ed. 1979):

> The reasons or grounds for the recall of the officer must be stated and may relate to reasons which are purely political in nature according to the minority view. The general rule apparently is that the grounds stated are sufficient if they do so relate. In jurisdictions in which political reasons may be grounds for recall, it is immaterial whether the officer is charged with misfeasance, malfeasance, or nonfeasance in office. In some jurisdictions, however, it is held that the charges, grounds, or reasons given for the recall must be more than disagreement with matters of policy, and must, in effect, constitute misfeasance, malfeasance, or nonfeasance in office.

(Footnotes omitted.) Hence, the right of recall in Washington is clearly distinguishable from the right provided by other states. *See Noel v. Oakland Cy. Clerk,* 92 Mich. App. 181, 284 N.W.2d 761 (1979).

Based on the specificity requirements outlined above, we find charge 4 insufficient because it is couched in very general terms. There is nothing in the petition indicating the time or place where the alleged illegal meeting took place. *See Herron v. McClanahan,* 28 Wn. App. 552, 560, 625 P.2d 707, *review denied,* 95 Wn.2d 1029 (1981).

■ Charge 5 is also insufficient. It alleges the School Board knowingly and willingly retained an incompetent superintendent.[4] Incompetent is defined as "lacking the

---

[4]Charge 5 includes the following list of acts which allegedly establish the superintendent's incompetency:

"1) His recommendation of a wasteful and improper use of school funds for non-school purposes (to create a community center).

"2) His recommendation of a Long Range Facilities Utilization Plan that

qualities . . . necessary to effective independent action". *Webster's Third New International Dictionary* 1144 (1961). Accepting the allegations as true, charge 5 does not amount to a prima facie showing that the Board retained a superintendent who lacked the qualities necessary to effective independent action. To the contrary, the allegations show that the superintendent was willing and able to make difficult and controversial recommendations and decisions. This alone shows his competency to take independent action. A superintendent cannot be expected to make decisions with which everyone will agree. Such decisions require the use of judgment and discretion. The use of such judgment does not as a matter of law establish incompetency. Without allegations showing the superintendent's incompetency, the Board cannot be subject to recall for retaining the superintendent.

Our holding does not mean that courts have the authority to look at the truthfulness of the charges. The Legislature has made it clear that courts do not possess such authority. Laws of 1984, ch. 170, § 4, p. 823. However, we believe the Legislature intended to limit the recall right by

wastes public funds. (*See* Superintendent's Preliminary Recommendations, May 7, 1984 and Superintendent's Final Recommendations, June 4, 1984.)

"3) His agreement to a lease incorporating a stipulation concerning possible closure of Shoreline High School that either had not been approved or had been improperly approved in Executive Session by the Board of Directors of the School District.

"4) His public denial at a meeting of the Board of Directors of the School District, on May 21, 1984, that the lease of the Shorecrest property had not been extended when the lease had in fact been extended on December 1, 1983.

"5) His decision on or before December 1, 1983 to close Shoreline High School, prior to preparation of a consultant's report on the issue or consideration of the issue by the Board of Directors of the School District or the community.

"6) His announcement in *Board Briefs,* a School District publication, on April 23, 1984, that the School Board would adopt the Long Range Facilities Utilization Plan on June 18, 1984.

"7) His failure to respond to repeated requests from Gretchen Atkinson and others for the date on which the Board of Directors of the School District approved extension of a lease of the Shorecrest property. The date of this action is a matter of public record and must be disclosed under Initiative 276, RCW 42.17.010(11)."

allowing courts to review the sufficiency of charges as a matter of law and decide whether the facts, if true, establish a prima facie act of misfeasance, malfeasance, or a violation of the oath of office.

In accordance with our conclusion herein, the following cases are overruled insomuch as they are inconsistent with our holding herein: *Danielson v. Faymonville,* 72 Wn.2d 854, 435 P.2d 963 (1967); *State ex rel. LaMon v. Westport,* 73 Wn.2d 255, 438 P.2d 200 (1968); *State ex rel. Citizens Against Mandatory Bussing v. Brooks,* 80 Wn.2d 121, 492 P.2d 536 (1972); and *Bocek v. Bayley,* 81 Wn.2d 831, 505 P.2d 814 (1973).

■ Finally, in addition to finding the charges sufficient, the trial court refused to allow a voir dire examination of the recall petitioners. The current statute requires persons submitting charges to have knowledge of the facts upon which the stated grounds for recall are based, rather than simply a belief that the charges are true. Laws of 1984, ch. 170, § 1, p. 821. This provision was recommended in Cohen, *Recall in Washington: A Time for Reform,* wherein the author notes:

> The purpose of this amendment is to discourage frivolous, scurrilous and baseless charges against a public officer made solely for the purpose of harassing that officer in the performance of his elective duties.

Cohen, 50 Wash. L. Rev. at 46. The current statute also imposes on the superior court the duty to determine the sufficiency of the recall charges. Laws of 1984, ch. 170, § 4, p. 823. We believe these two provisions, contrary to the trial court's determination, allow a voir dire examination by the judge of the recall petitioners. This voir dire is limited to questions directed at the petitioners' knowledge and/or basis of their knowledge of the charges contained in the recall petition. No questions may be asked concerning the truth or falsity of the charges. Accordingly, we reverse the trial court's decision not to allow a voir dire examination. However, because we conclude that all charges are insufficient, a remand is not necessary. Furthermore, because we

have found the charges insufficient, we need not reach the issue raised by the Board that the recall petitions were technically insufficient in that they failed to contain petitioners' addresses. Accordingly, the charges are dismissed.

WILLIAMS, C.J., and BRACHTENBACH, DOLLIVER, DIMMICK, and ANDERSEN, JJ., concur.

UTTER, J.—I adhere to my views in *Bocek v. Bayley,* 81 Wn.2d 831, 839–40, 505 P.2d 814 (1973).

DORE, J. (dissenting)—For the reasons I have set forth in the companion case of *Chandler v. Otto,* 103 Wn.2d 268, 693 P.2d 71 (1984), I do not agree with the majority's conclusion that this court's construction of the recall provision has been wrong the past 72 years. Thus, I would use principles set forth in prior decisions by this court in deciding this case. Doing so, it is clear that the four charges alleged by respondents are sufficient to allow a recall election. I would have affirmed the trial court.

The first two charges concern the decision to close Shoreline High School and two elementary schools. The majority correctly characterizes these acts as discretionary. It then finds that these decisions were not an abuse of discretion. Yet the question of whether an act was an abuse of discretion is not something that should be left to this court to decide. Whether there has been an abuse of discretion, *for recall purposes,* is the prerogative of the voters, the reason being that whether someone has abused his discretion is a subjective question. This court may not feel that it is an abuse of discretion for a public official to appoint his son to a high–paying position. The court, as it does with the superintendent in this case, can always rationalize that the public official's son is qualified, and, thus, there is no basis for a recall. Yet the voters in that political subdivision might not agree that the public official was innocent of any wrongdoing. For this court to deny the people the right to recall the official would undermine the intent of the framers

of our constitution.

In the present case, the members of this court may not feel that the decision to close the school on school–owned land while renovating a school on leased land is an abuse of discretion. Yet the people living in the Shoreline school district may feel that the decision was an abuse of discretion. Given that the right of recall is broadly construed, the voters should be given the opportunity to decide this question.

The fourth charge presented is that the school board members violated the Open Public Meetings Act of 1971, RCW 42.30. We have previously decided this issue and have held that such an allegation is sufficient for recall purposes.

> First, the charge that these appellants violated the Open Public Meetings Act of 1971 (RCW 42.30) upon two occasions appears to fall directly within the category of an act of malfeasance since such conduct is alleged to have been "unlawful" and in violation of one of the laws of this state. Additionally, pursuant to the legislative intent behind RCW 42.30, it is apparent that closed, secret meetings of school board members are not in the best interest of those students and other members of the school district who may be affected by the decisions of the board. *See* RCW 42.30.010.

*Bocek v. Bayley,* 81 Wn.2d 831, 837, 505 P.2d 814 (1973).

The majority asserts that because the respondents did not allege on what date the violation took place, the charge is insufficient. Yet we have held that failure to comply with a statutory directive will not invalidate the recall unless the irregularity would affect the merits of the proceeding. *McCormick v. Okanogan Cy.,* 90 Wn.2d 71, 578 P.2d 1303 (1978). Here, failure to allege the date of the violation will not affect the merits of the recall proceedings. In addition, the reason for the statutory requirement is to ensure that both the public electorate and the challenged official will make informed decisions in the recall process. *Herron v. McClanahan,* 28 Wn. App. 552, 559–60, 625 P.2d 707 (1981). The allegation that the school board members vio-

lated the Open Public Meetings Act of 1971 is sufficient for the electorate to make an informed decision.

The fifth charge alleges that the School Board employed an incompetent superintendent. In four prior cases, we have held that an allegation that an official has employed an incompetent subordinate is a sufficient ground for recall. *Bocek v. Bayley, supra; State ex rel. Citizens Against Mandatory Bussing v. Brooks,* 80 Wn.2d 121, 492 P.2d 536 (1972); *State ex rel. LaMon v. Westport,* 73 Wn.2d 255, 438 P.2d 200 (1968); *Morton v. McDonald,* 41 Wn.2d 889, 252 P.2d 577 (1953). In *Bocek v. Bayley, supra,* school board members were charged with hiring an unqualified school superintendent. In finding this charge sufficient, this court stated:

> Regarding the charge that these appellants hired an unqualified school superintendent, again assuming this charge to be true, it is apparent that such conduct may justifiably be considered to be an improper performance of a duty, or misfeasance, in clearly failing to act in the best interests of the school district community.

*Bocek,* at 837.

The majority, ignoring precedent, goes out of its way to find this charge insufficient. It claims that because someone acts independently he is, therefore, competent. This is not always true since there are many instances where a person acts independently but incompetently. This is another example where this court is depriving the people of the right to determine whether an official has acted improperly. As we have stated before:

> The charge may ultimately prove to be unfounded, even frivolous, but courts are not empowered to make that determination.

*Brooks,* at 129. Here, the majority is making the determination that the superintendent is competent solely because he took independent action.

CONCLUSION

The majority drastically changes the law pertaining to the right of recall. It admits as much when it states that it

is overruling four prior cases. It rationalizes its decision by stating that officials need to be protected from frivolous charges. Yet officials are already protected. The petitioners for a recall must get the signatures of either 25 percent or 35 percent of the voters who voted in the preceding election for that office, depending on the size of the political subdivision.[5] Moreover, a majority of the voters at the recall election must vote for that official's recall. In addition, the petitioner for a recall must verify under oath that he or she has knowledge of the alleged facts upon which the stated grounds for recall are based. RCW 29.82.010.

I would have affirmed.

---

[5]The number of signatures required in order to get a recall petition on the ballot is set forth in RCW 29.82.060:

"(1) In the case of a state officer, an officer of a city of the first class, a member of a school board in a city of the first class, or a county officer of a county of the first, second or third class—signatures of legal voters equal to twenty–five percent of the total number of votes cast for all candidates for the office to which the officer whose recall is demanded was elected at the preceding election.

"(2) In the case of an officer of any political subdivision, city, town, township, precinct, or school district other than those mentioned in subdivision (1), and in the case of a state senator or representative—signatures of legal voters equal to thirty–five percent of the total number of votes cast for all candidates for the office to which the officer whose recall is demanded was elected at the preceding election."