[Nos. 51612–0, 51639–1. En Banc. October 17, 1985.]

ALICE ESTEY, ET AL, *Respondents*, v. CURRAN D. DEMPSEY, ET AL, *Appellants*.

*Waldo & Schweda, P.S.,* by *Peter S. Schweda, Curran D. Dempsey,* pro se, and *Robert Taylor,* for appellants.

*Jeffrey J. Thimsen,* for respondents.

UTTER, J.—Recall charges were filed against three directors of West Valley School District No. 363. The trial court found the charges—all related to the school board's refusal to renew the superintendent's contract and issues arising from that controversy—insufficient to support recall. We agree and affirm the trial court.

The action which appears to have precipitated the cry for recall occurred on January 28, 1985, at a regular board meeting of the West Valley School Board. At that meeting, the Board by a 3 to 2 vote decided to not renew the employment contract of Superintendent Orville Gardner. Two separate sets of recall charges were filed: the first, by Mr. Curran Dempsey; the second, filed by attorney Peter S. Schweda on behalf of another group of citizens, will be referred to here—as it was by the trial court—as the

Schweda petition.

The Dempsey petition alleges that the school board members abused their discretion in refusing to renew the superintendent's contract. It also seeks recall because of the directors' refusal to state their reasons for their decision. The Schweda petition consists of four charges. The first is essentially the same as the Dempsey charge. The others allege violations of the Open Public Meetings Act of 1971, RCW 42.30.

The second charge of the Schweda petition alleges that the Board failed to hold its next regularly scheduled meeting following the vote to not renew. Although the Board's bylaws require that board meetings be held in the board meeting room in the nearby administration building, its February 11, 1985, meeting appears to have been set for the junior high school auditorium, perhaps in anticipation of a large crowd. On that date approximately 400 people gathered in the auditorium of Argonne Junior High School to attend the scheduled meeting of the Board. In the belief that it would be unlawful to hold a regular meeting of the Board in a place other than the established location, Mr. John Boston, board president, refused to convene the meeting and instead allowed citizens to address the Board.

The third charge of the Schweda petition alleges that during the informal comment session of February 11, 1985, Boston informed Directors Dennis Redford and Jim Williams of a special meeting to be held on February 13, 1985, with Dr. Larry Swift of the Washington State School Directors' Association. According to the charge, both directors objected to Boston the next day that the meeting was scheduled on such short notice. Although Boston allegedly assured both Redford and Williams that the meeting was canceled, the third charge asserts that Boston, Estey and Faulkes met Swift as originally scheduled.

The fourth Schweda charge accuses the Board of holding an illegal meeting on February 19, 1985, with Dr. Swift. It is alleged that no public notice was given, even though the notice delivered to the directors stated the meeting was to

be open. It is asserted that Boston was the only director not present at the meeting.

In recall proceedings, this court, in addition to original jurisdiction, has "revisory jurisdiction over the decisions of the superior courts . . ." RCW 29.82.160. We therefore review the recall petitions using the same criteria as the trial court. Those criteria, implementing the recall paragraph of the eighth amendment to the Washington Constitution (article 1, section 33), are found in RCW 29.82. Amendments to those criteria in 1976 and 1984 reflect a legislative intent to "free public officials from the harassment of recall elections grounded on frivolous charges or mere insinuations." *Chandler v. Otto,* 103 Wn.2d 268, 274, 693 P.2d 71 (1984). Therefore, recall petitions must be both legally and factually sufficient. In addition, courts must now ensure that "persons submitting charges . . . have knowledge of the facts upon which the stated grounds for recall are based, rather than simply a belief that the charges are true." *Cole v. Webster,* 103 Wn.2d 280, 288, 692 P.2d 799 (1984).

The recent amendments to the recall statute, along with *Chandler* and *Cole,* once again reemphasize that article 1, section 33 requires that recall by the electorate must be for cause. Of the states which allow recall, only Washington requires in its constitution that recall be for cause.

Prior to adoption of the eighth amendment in 1912, the people had the right to remove elected officers at will. At that time the constitution provided only that "officers not liable to impeachment shall be subject to removal for misconduct or malfeasance in office, in such manner as may be provided by law." Const. art. 5, § 3. In some Washington localities, recall petitioners were required only to state in their petitions the basis of their disagreement with the official whom they sought to recall. A department of this court ruled in 1909 that, absent constitutional limitations, recall at will was an inherent power of the people "to be exercised at any time the public interest was thought to require it." *Hilzinger v. Gillman,* 56 Wash. 228, 233, 105 P. 471 (1909)

("Like the British ministry, an elective officer under the [Everett city] charter is at all times answerable to the people for a failure to meet their approval on measures of public policy"). The pronouncement, however, was far from approval of recall at will: "Whether the interests of the city will be better subserved by a ready obedience to public sentiment than by a courageous adherence to the views of the individual officer . . . is a political and not a legal question." *Hilzinger,* at 235.

Concerned that unlimited recall impinged upon republican principles by exposing to recall public officers who took unpopular positions, the authors of the constitutional recall provisions sought to limit application of the recall to the removal of wrongdoers occupying elective office. *See* Cohen, *Recall in Washington: A Time for Reform,* 50 Wash. L. Rev. 29, 35–39 (1974).[1] The court upheld the limitation imposed by the eighth amendment, *State ex rel. Lynch v. Fairley,* 76 Wash. 332, 136 P. 374 (1913), and for over 50 years distinguished between recall at will and recall for cause. *See Cudihee v. Phelps,* 76 Wash. 314, 136 P. 367 (1913); *Gibson v. Campbell,* 136 Wash. 467, 241 P. 21 (1925); *Skidmore v. Fuller,* 59 Wn.2d 818, 370 P.2d 975 (1962). Beginning with *Danielson v. Faymonville,* 72 Wn.2d 854, 435 P.2d 963 (1967), the court adopted a liberal construction of what constitutes alleged misfeasance, malfeasance or a violation of the oath of office, along with a narrow scope of review of the legal sufficiency of the recall charges. In *Chandler,* we commented, at page 271:

> This scope of review has in most instances allowed the court to uphold nearly every recall petition. Such a narrow scope of review, however, disregards the apparent intent of the framers of the recall provision to limit the scope of the recall right to recall for cause. Furthermore, it has encouraged two abuses:

---

[1]Although Colorado does not require that recall be for cause, its constitution also offers elected officials some protection from frivolous recall actions by requiring the State to reimburse to incumbents not successfully recalled expenses they incur in protecting their seats. Colo. Const. art. 21, § 4.

> (1) The charges, though adequate on their face as cause for recall, may lack any factual basis whatsoever;
> (2) The charge may be entirely unrelated to the dispute; the real political issue or dispute between the recall petitioners and the elective officer may be submerged beneath the rhetoric of the charge.

Legislative action in 1976 and 1984, as well as our *Chandler* and *Cole* cases, in response to the legislative mandate, broadened that review. The trial court adopted, therefore, a broad scope of review of the open meetings charges in the Schweda petition. In addition, the trial judge was reluctant, as we are, to find the petitions legally and factually sufficient where the technical violations of the Open Public Meetings Act of 1971 alleged were not the community's underlying cause for seeking recall.[2]

Applying the broadened standard of review, we will first consider the legal sufficiency of the charges. If a charge is legally sufficient, we then proceed to examine whether the charge is factually sufficient.

■ The charges relating to the event precipitating these petitions, the refusal to renew the superintendent's contract, are legally insufficient. The right to renew a contract of employment with any school superintendent rests solely with the discretion of the school board. RCW 28A.58.137. "[A]n elected official cannot be recalled for appropriately exercising the discretion granted him or her by law." *Chandler,* at 274. Neither refusal to renew nor refusal to explain constitutes an arbitrary or unreasonable *abuse* of the Board's discretion. *See Chandler,* at 275. Although the Board's refusal to explain its decision when Gardner appears to have had substantial popular support "may have been politically inept and imprudent," *Danielson,* at 864

---

[2]The trial judge considered the question presented "not whether any rule or regulation may have been passed by, but whether or not the conduct of the three Board members sought to be recalled can, in good conscience, justify a Court in ordering them to be put through the expense and tribulation of a recall proceeding. The Court does not feel that would constitute justice." Clerk's Papers, at 22–23.

(Hill, J., dissenting), as the trial court noted, "there is no cited statute which indicates a duty to come forward with explanations." Clerk's Papers, at 19–20. Furthermore, "nowhere in the files, the oral testimony, or the arguments presented was there any indication that board silence was motivated by an evil or wrongful purpose." Clerk's Papers, at 20.

The Open Public Meetings Act of 1971 charges must be reviewed in light of the admonition that the act is to be construed liberally "to guarantee public access to and participation in the activities of their representative agencies." *Mead Sch. Dist. 354 v. Mead Educ. Ass'n,* 85 Wn.2d 140, 145, 530 P.2d 302 (1975). Although we have previously considered violations of the act "malfeasance" sufficient for recall, *Bocek v. Bayley,* 81 Wn.2d 831, 837, 505 P.2d 814 (1973), *overruled in part in Cole v. Webster,* 103 Wn.2d 280, 288, 692 P.2d 799 (1984), the petitioners here sought to use these alleged violations as leverage to overturn discretionary action of which they disapproved. While no de minimis exception to the act exists, the act contains its own penalties.[3] Because violation of the act does not constitute a crime, the act should not be liberally construed as a ground for recall unless the alleged violations actually form the underlying basis of the recall charges.

We find charges 3 and 4 both legally insufficient. The meetings held on February 13 and February 19, 1985, not regularly scheduled meetings of the Board, were character-

---

[3] "Each member of the governing body who attends a meeting of such governing body where action is taken in violation of any provision of this chapter applicable to him, with knowledge of the fact that the meeting is in violation thereof, shall be subject to personal liability in the form of a civil penalty in the amount of one hundred dollars. The civil penalty shall be assessed by a judge of the superior court and an action to enforce this penalty may be brought by any person. A violation of this chapter does not constitute a crime and assessment of the civil penalty by a judge shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense." RCW 42.30.120.

"Any person may commence an action either by mandamus or injunction for the purpose of stopping violations or preventing threatened violations of this chapter by members of a governing body." RCW 42.30.130.

ized "special meetings" in the petition. Charge 4 is insufficient because no public notice is required for "special meetings." Written notice for special meetings need be given only to each member of the governing body and to local media which has on file with the governing body a request to be notified of any or all special meetings. RCW 42.30.080. It is not alleged that any local media had requested notification of special meetings. In addition, the alleged failure to notify some directors of the February 19, 1985 meeting was cured by the attendance of those members at that meeting. RCW 42.30.080.

Charge 3 is legally insufficient because RCW 42.30.020(4) requires that "action" must take place for a "meeting" to occur. "Action" means the transaction of the official business of a public agency by a governing body, RCW 42.30-.020(3), and does not automatically occur when a majority of the members of a governing body gather together, RCW 42.30.070. The petition alleges only that "action was taken on negotiations" for a consulting contract at the February 13, 1985 meeting and fails to state what official business was transacted. This charge fails to state with specificity the substantial conduct which clearly amounts to misfeasance, malfeasance or a violation of the oath of office. *Chandler,* at 274. Whether the nature of the alleged "action" was a decision by the Board to *discuss* negotiating a contract, to *negotiate* a contract, or to *award* a contract as a result of negotiations, is unclear and the charge, therefore, is legally insufficient. The allegations in charges 3 and 4 that the Board failed to comply with its own bylaws in scheduling or holding the meetings of February 13 and February 19, 1985, if true, nevertheless do not amount to substantial conduct justifying recall. *Chandler,* at 274.

■ The second charge, though legally sufficient, is factually insufficient. "Regular meetings of the board of directors . . . *shall be held* . . . as the board of directors by resolution shall determine or the bylaws of the board may prescribe." RCW 28A.57.324. The Board failed to hold its regular meeting as scheduled in violation of its bylaw 7130.

Although "malfeasance" only requires commission of an unlawful act, voir dire indicated that the Board refused to call the regular meeting scheduled for February 11, 1985, on advice of counsel. In a recall case, recall petitioners should at least have knowledge of facts which indicate an *intent* to commit an unlawful act.

The charges brought in the Dempsey and Schweda petitions constitute the type of abuse of the recall statute which the 1984 amendments seek to eliminate. The charges are lacking in cause. We affirm the trial court.

DOLLIVER, C.J., and BRACHTENBACH, DORE, ANDERSEN, and DURHAM, JJ., concur.

PEARSON, J. (concurring)—I agree with the majority that the recall petitions submitted in this case present insufficient grounds for a recall election. However, I cannot condone the majority's inquiry into a recall petitioner's underlying motivation. Rather, judicial review of the recall charges must be confined to a determination of their legal and factual sufficiency.

In Washington an elective public official can be recalled only for cause. Const. art. 1, §§ 33, 34 (amend. 8); RCW 29.82.010. The requirement of cause, however, has not always been emphasized in the determination of a recall petition's sufficiency. Thus, in the past the right of recall was used in many instances to harass public officials. Recently, in an attempt to prohibit such harassment yet retain the public's right to recall for cause and following several legislative changes in the recall statute, this court held that a "recall petition must be both legally and factually sufficient." *Chandler v. Otto,* 103 Wn.2d 268, 274, 693 P.2d 71 (1984). Factual sufficiency means the petition must comply with the specificity requirements of RCW 29.82.010 and legal sufficiency means the petition must state with specificity substantial conduct clearly amounting to misfeasance, malfeasance or violation of the oath of office. *Chandler,* at 274.

As the majority concludes, charge 1 is clearly insufficient. The requirement of legal sufficiency prohibits an elected official from being recalled for appropriately exercising the discretion granted him by law. Such a finding, however, does not in itself demand the conclusion that the other charges are insufficient. Rather, each individual charge must be scrutinized under the test established in *Chandler*. Pursuant to this test, it is at once clear that charges 2 through 4 are likewise legally insufficient.

Charge 2 alleges that the Board failed to convene a regularly scheduled public meeting. Admittedly, the Board did fail to convene a meeting on the day prescribed in the bylaws. Yet the decision not to convene was based on the belief that holding a meeting in the auditorium would likewise violate the bylaws. In light of this conflict, it was not improper to move the meeting to a different date so the conflict could be resolved. The Board merely made a decision to set the hearing over to a different date. In light of the circumstances, this decision does not constitute substantial conduct amounting to misfeasance, malfeasance or violation of the oath of office.

Charge 3 is also legally insufficient. The charge merely states that at a secret meeting action was taken on negotiations. The Open Public Meetings Act of 1971, RCW 42.30, prohibits secret meetings at which action is taken. As both the majority and dissent point out, action on negotiations does not constitute "action" as that term is defined in former RCW 42.30.020(3). Without taking action, as that term is defined in the statute, there could be no meeting. Without a meeting, notice is not required. Hence, there was no violation of the act and therefore no legally sufficient grounds for recall.

Finally, I believe charge 4 is likewise legally insufficient. The charge alleges that a special meeting was held without public notice being given. Both the majority and dissent agree that the open public meetings act did not require public notice of this special meeting. The dissent, however, contends that the Board violated its bylaws when it failed

to give notice of the special meeting. As noted by the trial judge, this controversy occurred over a period of less than 2 months. Technically speaking, some notices were not properly given. But there is no indication that the three members sought to be recalled were attempting to conceal their activity. The Board's activity does not constitute conduct substantial enough to be legally sufficient. Thus, I would hold that none of the charges are legally sufficient and would dismiss the petitions.

CALLOW, J., concurs with PEARSON, J.

GOODLOE, J. (concurring in part, dissenting in part)—This case presents for review the legal and factual sufficiency of a variety of recall charges filed against three West Valley School District directors. I concur in the majority's determination that charge 1 of the Dempsey and Schweda petitions is insufficient. The directors did not abuse their discretion by refusing to renew or refusing to disclose their reasons for not renewing an employment contract. However, I dissent from the majority's analysis and some of its results regarding the remaining charges in the Schweda petition which are premised on violations of the Open Public Meetings Act of 1971, RCW 42.30.

The majority states that "[b]ecause violation of the [open public meetings] act does not constitute a crime, the act should not be liberally construed as a ground for recall unless the alleged violations actually form the underlying basis of the recall charges." Majority opinion, at 603. I cannot support this analysis. RCW 29.82.010 provides the requirements for initiating the recall of an elective public officer. It provides in pertinent part:

> Whenever any legal voter . . . desires to demand the recall and discharge of any elective public officer . . . he . . . shall prepare a typewritten charge, reciting that such officer, naming him or her and giving the title of his office, has committed an act or acts of malfeasance, or . . . of misfeasance while in office, or has violated his oath of office . . . The charge shall state the act or acts

complained of in concise language, give a detailed description including the approximate date, location, and nature of each act complained of . . .

For the purposes of this chapter:

(1) "Misfeasance" or "malfeasance" in office means any wrongful conduct that affects, interrupts, or interferes with the performance of official duty;

(a) Additionally, "misfeasance" in office means the performance of a duty in an improper manner; and

(b) Additionally, "malfeasance" in office means the commission of an unlawful act;

(2) "Violation of the oath of office" means the wilful neglect or failure by an elective public officer to perform faithfully a duty imposed by law.

RCW 29.82.010.

Nothing in the recall statute requires the elective public officer's act to be a crime. The definitions of misfeasance in RCW 29.82.010(1)(a) and (b) and violation of the oath of office in RCW 29.82.010(2) encompass violations of the open public meetings act. The failure of an elective public officer to comply with the requirements of the open public meetings act is itself a sufficient ground for recall. The intent of the open public meetings act is "to guarantee public access to and participation in the activities of their representative agencies." *Mead Sch. Dist. 354 v. Mead Educ. Ass'n*, 85 Wn.2d 140, 145, 530 P.2d 302 (1975); RCW 42.30.010. The failure to follow the act's requirements denies the public its rights to access and involvement. The public should be allowed to challenge the continued occupancy of office of those who would deny them these rights. To say that because the public has other concerns about actions of elective public officers which cannot constitute grounds for recall the public thereby has lost its challenge of these officers for violations of the open public meetings act is to deny the public its right to recall under the statute. How is one to know what is actually the underlying basis of the charge? Majority opinion, at 603. Any time a recall petition is filed, one may assume that members of the electorate are dissatisfied with the elected. I recognize and

adhere to the requirement that recall must be for cause. But cause has been articulated and defined in the recall statute as misfeasance, malfeasance, and violation of the oath of office. I believe that violations of the open public meetings act fit these definitions. I would hold a charge alleging violation of the open public meetings act is a sufficient basis for recall, as long as the charge is factually and legally sufficient. When elected officials take unpopular positions, it would behoove them to be careful not to deny the public its right to observe their actions.

Having determined that violations of the open public meetings act may be a basis for a recall charge, it is necessary to review charges 2, 3, and 4 of the Schweda petition for factual and legal sufficiency. *Chandler v. Otto,* 103 Wn.2d 268, 274, 693 P.2d 71 (1984); *Cole v. Webster,* 103 Wn.2d 280, 283, 692 P.2d 799 (1984).

## Charge 2

Paraphrased, charge 2 alleged that the Board failed to convene the regularly scheduled public board meeting of February 11, 1985, the second Monday of February. The charge further alleged this constituted malfeasance, misfeasance, and violation of the oath of office.

RCW 28A.57.324 provides in pertinent part that "[r]egular meetings of the board of directors of any school district shall be held . . . at such a time as the . . . bylaws of the board may prescribe. . . . All meetings shall be open to the public unless the board shall otherwise order an executive session as provided in RCW 42.30.110." *See also* RCW 42.30.070. Bylaw 7130 provides: "The Board shall hold regular meetings on the second and fourth Mondays of each month, at 7:30 p.m., in the Administration Building, North 2805 Argonne Road, Spokane, Washington." Clerk's Papers, at 13.

Because a large crowd was expected, this being the first meeting after the Board voted not to renew the superintendent's contract, the meeting location was changed from the Administration Building to the Argonne Junior High

School auditorium. The entire Board and approximately 400 citizens were present in the auditorium for the scheduled meeting. Board president and director John Boston refused to convene the meeting, stating that on advice of legal counsel the meeting had to be convened in the Administration Building. Some citizens then asked the Board to go to the Administration Building, properly convene the meeting, and then adjourn it to the auditorium. Boston refused. No meeting was held, but citizens were allowed to address the Board in the auditorium.

The majority found the charge was legally sufficient, but factually insufficient because the refusal to convene the meeting in the auditorium was based on advice of counsel. Thus the majority found the petitioners did not "have knowledge of facts which indicate an *intent* [by a Board member] to commit an unlawful act." Majority opinion, at 605. I find no intent requirement in the recall statute. RCW 29.82.010. Also, I find that once the viable and legal option of convening the meeting in the Administration Building and then adjourning to the auditorium was presented, RCW 42.30.090, failure to do so amounted to a prima facie showing of wrongful conduct and a willful failure to perform faithfully a duty imposed by law. RCW 29.82.010(1), (2).

Legal counsel advised Boston not to convene the meeting in the auditorium. There is no indication that Boston was acting under advice of legal counsel when he refused to convene the meeting in the Administration Building and then adjourn to the auditorium. In fact, at the next regular meeting on February 25, 1985, after the meeting commenced in the Administration Building, Boston moved to adjourn it to the auditorium. The majority of the Board agreed and the meeting was adjourned and reconvened.

I would hold that charge 2 is both factually and legally sufficient.

## Charge 3

Paraphrased, charge 3 alleged that a special meeting was

held on February 13, 1985, with no notice being given to the public and with two directors, Redford and Williams, having been told that the meeting was canceled. The charge stated that on February 13, the other three school directors met with Dr. Swift of the Washington State School Directors Association (WSSDA) and at the meeting "action was taken on negotiations" for the Board to contract with the WSSDA for the latter's assistance in the selection process of a new superintendent. Clerk's Papers, at 7. The charge was very specific as to dates, times, places, and people involved. It alleged violations of several statutes, board bylaws, and that the actions constituted misfeasance, malfeasance, and violation of the oath of office.

I will first address the notice issue. Notice of a special meeting must be given to the directors and to media requesting notice at least 24 hours before the meeting. RCW 42.30.080. Bylaw 7130 states notice of special meetings "will be posted (advertised) at least twenty–four (24) hours prior to the meeting." Clerk's Papers, at 13. Directors Redford and Williams were given notice within 24 hours but when they objected to the meeting time Boston told them that the meeting was canceled, and that only Boston would meet Swift to pick up some materials. However, Boston with the two other directors, Estey and Faulkes, met with Swift as originally scheduled. No notice of the meeting was ever posted or advertised. If a meeting was held, I would hold the failure to give notice as required by the bylaw was the performance of a duty in an improper manner.

Meetings of public bodies are required to be open and public. RCW 42.30.030. Meeting is defined in RCW 42.30-.020(4) as meaning "meetings at which action is taken." RCW 42.30.020(3) states

"Action" means the transaction of the official business of a public agency by a governing body including but not limited to a collective decision made by a majority of the members of a governing body, a collective commitment or promise by a majority of the members of a governing

body to make a positive or negative decision, or an actual vote by a majority of the members of a governing body when sitting as a body or entity, upon a motion, proposal, resolution, order, or ordinance.

Laws of 1983, ch. 155, § 1, p. 669.

The charge, by merely saying "action was taken on the negotiations" without elaborating, is insufficient to show the three directors made a collective decision, commitment, or promise, or took a vote as required by the statute in effect at the time. Clerk's Papers, at 7.[4] The situation in this case is distinguishable from the charge in *Teaford v. Howard*, 104 Wn.2d 580, 707 P.2d 1327 (1985), which alleged the majority of the Board made a collective agreement at a private meeting to vote no on an agenda item. The challenged directors were fortuitously prevented from taking any "action" because Swift decided that all the directors should be present. Since no action as defined in the then effective statute was alleged, I find no meeting occurred. Because no meeting occurred, no notice had to be given. Therefore, I concur in the majority's result of insufficiency.

### Charge 4

Paraphrased, charge 4 alleged that a majority of the Board met on February 19, 1985, for a special meeting with Swift without public notice being given. The charge further alleged failure to give notice constituted misfeasance, malfeasance, and violation of the oath of office. Unlike the February 13 meeting, a meeting as defined in the open public meetings act occurred on February 19.

I agree with the majority that RCW 42.30.080 does not

---

[4]RCW 42.30.020(3) has been amended effective July 28, 1985, as follows:

(3) "Action" means the transaction of the official business of a public agency by a governing body including but not limited to receipt of public testimony, deliberations, discussions, considerations, reviews, evaluations, and final actions. "Final action" means a collective positive or negative decision, or *an actual vote by a majority of the members of a governing body when sitting as a body or entity, upon a motion, proposal, resolution, order, or ordinance.* (Underlining deleted.) Laws of 1985, ch. 366, § 1, p. 1301. This broadened definition of action might encompass negotiations on contracts.

explicitly require notice to the general public of special meetings. However, bylaw 7130 requires that "[n]otice will be posted (advertised) at least twenty–four (24) hours prior to the meeting." Clerk's Papers, at 13. No notice was posted or advertised. I would hold violation of the Board's own bylaw, especially when it deals with notice to the public of a meeting which is required by law to be open to the public, RCW 42.30.030, is grounds for recall. The fact that the Board could have closed the strategy planning portion of the special meeting pursuant to bylaw 7130 does not dissuade me from my opinion that the public had the right to know of the special meeting.

In conclusion, I find charges 2 and 4 to be factually and legally sufficient. I would remand to the Superior Court for determination of the adequacy of the ballot synopsis on these charges.