# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
April 27, 2023

_González, C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 27, 2023

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

IN THE MATTER OF:

THE RECALL OF MISIPATI SEMI BIRD, RICHLAND SCHOOL BOARD, POSITION 3

_____

IN THE MATTER OF:

THE RECALL OF AUDRA BYRD, RICHLAND SCHOOL BOARD, POSITION 1

_____

IN THE MATTER OF:

THE RECALL OF KARI WILLIAMS, RICHLAND SCHOOL BOARD, POSITION 4

No. 100976-3

Benton County Superior Court
No. 22-2-00601-03
(consolidated with No. 22-2-00602-03 and No. 22-2-00603-03)

EN BANC

Filed: April 27, 2023

GORDON McCLOUD, J.—On February 15, 2022, while Washington Governor Jay Inslee's COVID-19 related mask mandate remained binding throughout the state, three of five Richland School District board (RSDB) members voted to make face coverings optional in Richland schools. Clerk's Papers (CP) at 243-44. This vote conflicted directly with the then effective statewide masking requirement.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Recall of Bird et al.*, No. 100976-3

Two months later, a group of Richland voters filed petitions to recall those three RSDB members. The petitioners alleged that the three RSDB members violated the Open Public Meetings Act of 1971 (OPMA), chapter 42.30 RCW, and knowingly violated state law in different ways when they voted to lift the mask mandate from the Richland schools. CP at 7-14, 565-571, 1082-1088. The trial court agreed that many of the counts containing those allegations were factually and legally sufficient to be placed on the ballot for the voters to decide.

We agree with most of the trial court's decisions. We affirm the trial court's decision to uphold the counts that the trial court grouped into synopses 1, 3, and 5: petitioners sufficiently allege that the RSDB members knowingly violated both the OPMA and the statewide mask mandate. But we reverse the trial court's decision to uphold the counts that the trial court grouped into synopsis 4: the aspirational, nonbinding, RSDB "Code of Ethics" cannot form the legal basis for a recall charge.

We therefore affirm in part and reverse in part.

FACTUAL HISTORY

The RSDB consists of five members. Each RSDB member was elected by the community to serve a term of four years. Richland Sch. Dist. (RSD), Bd. of Dirs. Pol'y No. 1110, *Number of Members and Terms of Office* (rev. Nov. 8, 2005), https://app.eduportal.com/documents/view/521815 [https://perma.cc/5NSN-

2

*In re Recall of Bird et al.*, No. 100976-3

D3MG]. At the time that this recall petition was filed, the RSDB consisted of members Jill Oldson, Kari Williams, Audra Byrd, Rick Jansons, and M. Semi Bird. *Board Members,* RSD (last visited Apr. 21, 2023), https://www.rsd.edu/district/school-board/board-members.

At the beginning of 2022, the State lifted many of the restrictions that Governor Inslee and the secretary of health had previously adopted to address the COVID-19 pandemic. *See, e.g.*, Proclamation by Governor Jay Inslee, No. 20-09.3 (Wash. Dec. 16, 2022) (phased reopening of schools), https://www.governor.wa.gov/sites/default/files/proclamations/proc_20-09.3.pdf [https://perma.cc/BZ35-82H9]. But the law still required face coverings in most indoor settings in Washington, including in public schools. Wash. Sec'y of Health Ord. 20-03 (Wash. June 24, 2020), https://www.governor.wa.gov/sites/default/files/Secretary_of_Health_Order_20-03_Statewide_Face_Coverings.pdf [https://perma.cc/DUV4-92K3].

Around this time, a few members of the RSDB were discussing options for removing the mask mandate from Richland schools and RSDB meetings. *See, e.g.*, CP at 486-88 (texts between Williams and Bird), 507-12 (texts between Williams and Byrd).

During the course of these discussions, the RSDB members received advice from several attorneys about whether masks could be removed during RSDB

*In re Recall of Bird et al.*, No. 100976-3

meetings. They were consistently advised that the answer was no, masks cannot be removed. *Id.* at 96-97 (attorney advising that masks could temporarily be removed at a public meeting while speaking), 98-100 (attorney advising that every person in attendance at public meeting is required to wear a mask), 101 (attorney e-mail pointing to mask mandate with no exception for RSDB members at public meetings).

On February 8, at a regular RSDB meeting, Byrd moved to remove the mask mandate in the RSD. *Id.* at 238. The motion failed for want of a second. *Id.*

Then, on February 15, the RSDB held a special meeting. *Id.* at 243-44 (Feb. 15 meeting minutes). The agenda contained only one item: "Resolution No. 940 – Local Control." *Id*. at 243. Bird made a motion: "EFFECTIVE IMMEDIATELY THE BOARD VOTE TO GO TO MASK CHOICE IN THE RICHLAND SCHOOL DISTRICT." *Id*. Byrd seconded the motion and discussion followed. *Id*. The minutes show that RSDB member Jansons stated that "the motion is out of order" because the motion "was not given to the Board ahead of time." *Id*. Jansons also said that he would vote "no" because the vote violates the law. *Id*. at 244. Bird responded that COVID-19 cases had declined in the community, that he "[felt] the mandate is not a law," and that he "[felt] mask choice is the equitable decision." *Id.* Bird, Williams, and Byrd voted yes and Oldson and Jansons voted no. *Id*. The motion carried. *Id.*

*In re Recall of Bird et al.*, No. 100976-3

The next day, the superintendent closed Richland schools and the RSDB held an emergency meeting to discuss the legality of the previous day's decision. *Id*. at 275, 831-32, 1349. They took no action, and Richland schools remained closed the following day. *Id.*

The RSDB then held another emergency meeting the next day. *Id*. All RSDB members, except Bird, voted to modify the resolution removing the mask mandate by changing its effective date. The modified resolution delayed the effective date to March 22. *Id*. This modification made the resolution's effective date coincide with the governor's newest projected mask mandate end date, which had been announced earlier that day. *Id*.

Richland schools resumed regular operations on Friday, February 18. *See id*.

PROCEDURAL HISTORY

On April 11, 2022, a group of Richland voters filed petitions to recall the three RSDB members who voted to remove the mask mandate at the February 15 meeting: M. Semi Bird, Audra Byrd, and Kari Williams. *Id.* at 7-13, 565-570, 1081-1088. Ten counts were brought against Byrd and Williams, and 12 counts were brought against Bird. *Id.*

On May 11, 2022, the superior court issued its order as to the factual and legal sufficiency of the counts. The superior court determined that eight of the counts against each RSDB member were factually and legally sufficient, altered

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

some language of the ballot synopses, and dismissed multiple counts. *Id.* at 454-61, 973-79, 1486-92. After the superior court's orders, the revised ballot synopses were identical for all three RSDB members. *Id*. at 461, 979, 1492.

On May 13, 2022, the three RSDB members filed identical motions for reconsideration as to counts 1 and 2 (synopses 1 and 2). *Id*. at 462-74, 980-992, 1493-1505.

On May 25, 2022, all three RSDB members filed a notice of appeal seeking direct review by our court of the superior court's May 11 order. *Id*. at 540-41, 1058-59, 1571-72.

On June 10, after this court accepted review, the superior court issued three identical orders granting the motions to reconsider count 1 (synopsis 2) and denying the RSDB members' motions to reconsider count 2 (synopsis 1). *Id*. at 555-58, 1072-75, 1585-88. The superior court reversed its prior ruling on count 1 (synopsis 2) because it determined, after reexamining text message exchanges between the RSDB members, that there was not a "quorum" sufficient to trigger application of the OPMA. *Id*. at 556, 1073, 1586.

On September 29, the petitioners moved this court, pursuant to RAP 7.2(e)(2), for an order authorizing the trial court to enter its postappeal order on that motion for reconsideration nunc pro tunc. We granted that unopposed motion.

That leaves the following matters before this court for review:

*In re Recall of Bird et al.*, No. 100976-3

| Synopsis # | Synopsis text | Count # |
|---|---|---|
| 1 | "Violated the Open Public Meetings Act by voting at a special meeting taking final action on a matter, to wit: masking optional, that had not been included in the published public meeting agenda." CP at 461, 979, 1492 | 2 (all) |
| 3 | "Voted to make [wearing] masks at schools optional, in knowing violation of the law and in excess of the powers of a school board, even after warnings from the State and from legal counsel." CP at 461, 979, 1492 | 3, 4 (all) |
| 4 | "Violated the District Code of Ethics by failing to: (1) uphold all laws, rules and regulations, and/or (2) use legal and ethical procedures; and/or (3) ensure schools are well run; and/or (4) consult those affected by changes in policy." CP at 461, 979, 1492 | 6, 7, 8 (Byrd/Williams); 8, 9, 10 (Bird) |
| 5 | "Violated District Policies and Procedures by failing to assure compliance with law and policy." CP at 461, 979, 1492 | 10 (Byrd/Williams); 12 (Bird) |

ANALYSIS

Article I, section 33 of the Washington State Constitution recognizes that voters have the right to recall certain elected officials. The recall petition must "stat[e] the matters complained of" and "recit[e] that such officer has committed some act or acts of malfeasance or misfeasance while in office, or who has violated [the] oath of office." WASH. CONST. art. I, § 33.

The legislature implemented this constitutional right to recall with chapter 29A.56 RCW. Under that chapter, "misfeasance" or "malfeasance" in office means "any wrongful conduct that affects, interrupts, or interferes with the performance

7

*In re Recall of Bird et al.*, No. 100976-3

of official duty." RCW 29A.56.110. "Misfeasance in office" also "means the performance of a duty in an improper manner" and "malfeasance in office" also "means the commission of an unlawful act." *Id.* "Violation of the oath of office" is defined as "the neglect or knowing failure by an elective public officer to perform faithfully a duty imposed by law." *Id.*

The statute limits the court's role in the recall process. RCW 29A.56.140 states, "The court shall not consider the truth of the charges, but only their sufficiency." So the court decides whether the petition is "both legally and factually sufficient." *Chandler v. Otto*, 103 Wn.2d 268, 274, 693 P.2d 71 (1984).

To be "legally sufficient," a recall charge must "define substantial conduct clearly amounting to misfeasance, malfeasance or a violation of the oath of office." *In re Recall of Wasson*, 149 Wn.2d 787, 791, 72 P.3d 170 (2003) (citing *In re Recall of Anderson*, 131 Wn.2d 92, 95, 929 P.2d 410 (1997)). The charge must also "identify a standard, law, or rule that would make the officer's conduct wrongful, improper, or unlawful." *In re Recall of Ackerson*, 143 Wn.2d 366, 377, 20 P.3d 930 (2001). Accordingly, a recall petition is not sufficient if it alleges that an elected official exercised discretion granted to them by law, *Chandler*, 103 Wn.2d at 274, unless the petition also shows that "the official exercised discretion in a manifestly unreasonable manner." *In re Recall of Shipman*, 125 Wn.2d 683,

8

*In re Recall of Bird et al.*, No. 100976-3

685, 886 P.2d 1127 (1995) (citing *Greco v. Parsons*, 105 Wn.2d 669, 672, 717 P.2d 1368 (1986)).

To be "factually sufficient," the charges "may contain some conclusions, [but] taken as a whole they do state sufficient facts to identify to the electors and to the official being recalled acts or failure to act which without justification would constitute a prima facie showing of misfeasance, malfeasance, or a violation of the oath of office." *Chandler*, 103 Wn.2d at 274. The charge must "state the act or acts complained of in concise language, [and] give a detailed description including the approximate date, location, and nature of each act complained of." RCW 29.56.110. The individual making the charge must have knowledge of the alleged facts on which the stated grounds for recall are based. *Id.* This knowledge need not be firsthand, but it must be "more than simply a belief that the charges are true." *In re Recall of Reed*, 156 Wn.2d 53, 58, 124 P.3d 279 (2005) (per curiam) (citing *Ackerson*, 143 Wn.2d at 373; *In re Recall of Lee*, 122 Wn.2d 613, 617, 859 P.2d 1244 (1993)). Additionally, "where the petition charges the official with violating the law, the petitioners must at least have knowledge of facts which indicate an intent to commit an unlawful act." *In re Recall of Wade*, 115 Wn.2d 544, 549, 799 P.2d 1179 (1990) (citing *Estey v. Dempsey*, 104 Wn.2d 597, 605, 707 P.2d 1338 (1985); *In re Recall of DeBruyn*, 112 Wn.2d 924, 930, 774 P.2d 1196 (1989)).

9

*In re Recall of Bird et al.*, No. 100976-3

Critically, however, "[i]t is the voters, not the courts, who will ultimately act as the fact finders." *In re Recall of West*, 155 Wn.2d 659, 662, 121 P.3d 1190 (2005) (citing RCW 29A.56.140; *In re Recall of Kast*, 144 Wn.2d 807, 813, 31 P.3d 677 (2001)).

We review the superior court's decisions on both legal and factual sufficiency de novo. *In re Recall of Ward*, 175 Wn.2d 429, 435, 282 P.3d 1093 (2012). Recall statutes are construed in favor of the voter, and technical violations of those statutes are not fatal as long as the charges "give the elected official enough information to respond to the charges and the voters enough information to evaluate them." *West*, 155 Wn.2d at 663.

I.      Synopsis 1 is factually and legally sufficient

Synopsis 1, which summarized count 2, was identical for all three RSDB members. It stated, "1. Violated the Open Public Meetings Act by voting at a special meeting taking final action on a matter, to wit: masking optional, that had not been included in the published public meeting agenda." CP at 461, 979, 1492.

The vote on February 15, 2022 to remove the mask mandate in Richland schools occurred at a "special meeting." To hold a special meeting, written notice must be provided to each member of the governing board, provided to local news organizations, posted on the agency's website, and prominently displayed at the entrance of the agency's principal location and meeting site. RCW 42.30.080 (1)-

*In re Recall of Bird et al.*, No. 100976-3

(2). The notices "shall specify the time and place of the special meeting and the *business to be transacted*. Final disposition shall not be taken on any other matter at such meetings by the governing body." RCW 42.30.080(3) (emphasis added).

The notice for this special meeting listed the business to be transacted, in full, as "Resolution No. 940 – Local Control." The resolution was not attached to the agenda and it did not exist in any written form—the only notice that the public or RSDB members received was the title of this agenda item. The petitioners allege that this short title failed to provide proper notice of the "business to be transacted," and therefore final disposition on the matter violated the OPMA. Br. of Resp'ts at 25-26; RCW 42.30.080(3).

This count is legally and factually sufficient.

The OPMA states that special meeting notices "shall specify . . . the business to be transacted." RCW 42.30.080(3). Here, the agenda item "Local Control" does not provide notice of the business to be transacted. Instead, it is vague and could be interpreted by a member of the public as applying to almost any issue. A contemporaneous text message from RSDB member Oldson to RSDB member Williams supports the petitioners' assertion that this agenda title was too vague to constitute "specif[ication]" of the business to be transacted; that text message, sent before the February 15 meeting, states, "What is the plan with the resolution. I'm a little confused on that." CP at 500. RSDB member Jansons' comments at the

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

February 15 meeting itself supports the petitioners' assertion on this point, also; the meeting minutes show that Jansons stated that the "motion is out of order. This was not given to the [RSDB] ahead of time. His understanding was that the [RSDB] was discussing a resolution for local control." *Id.* at 243. Jansons also stated at the meeting that "there was no discussion or notification that a motion for mask choice would be on the agenda. He feels ambushed." *Id.* at 244. In other words, the agenda item was confusing even to the RSDB members—it must certainly have been confusing to the members of the public who are entitled to notification.

The RSDB members defended this charge by arguing that the superintendent, not the RSDB, has the duty to publish the agenda before a meeting. Opening Br. of Appellants at 26. And the RSDB members' assertion about who has the duty to publish the agenda is correct. RSD, Bd. of Dirs. Pol'y No. 1250A, *Duties of the Secretary/Clerk of the Board* (rev. May 9, 2006), https://app.eduportal.com/documents/view/521826 [https://perma.cc/9EQR-H5Q4].

But it is completely irrelevant. It doesn't matter who publishes the agenda— if it's insufficient, the OPMA bars the body from taking action on the insufficiently "specif[ied]" item. RCW 42.30.080(3). As the trial court stated, "[A]fter dissenting [RSDB] members stated they were not provided proper notice and felt ambushed, the [RSDB] had a duty to not take the vote and note it up properly." CP at 457.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Recall of Bird et al.*, No. 100976-3

The RSDB members next argue that this charge constitutes only a technical violation of the OPMA, so it is really just a pretext for the real motive for the recall petition, that is, the three RSDB members' vote to remove the mask mandate. Opening Br. of Appellants at 27-28 (relying for this argument on *Estey*, 104 Wn.2d at 603, which held OPMA violation not sufficient grounds for recall because alleged violations did not "actually form the underlying basis of the recall charges"—the real basis was a discretionary action). And the RSDB members' assertion that the vote to remove the mask mandate is the main reason that the petitioners filed the recall charges seems correct.

But that is also totally irrelevant. *Violating the open meeting and notice requirements of the OPMA is not "technical."* Openness and notice form the heart of the OPMA. The facts alleged show that the charged RSDB members took action on an agenda item that was not properly described in the agenda and then voted on that item after a dissenting RSDB member repeatedly stated that he lacked notice.

Finally, the RSDB members argue that they did not intend to violate the law. *Wade*, 115 Wn.2d at 549 (petitioners must "have knowledge of facts which indicate an intent to commit an unlawful act" (citing *Estey*, 104 Wn.2d at 605; *DeBruyn*, 112 Wn.2d at 930)); Opening Br. of Appellants at 28. This is certainly relevant.

13

*In re Recall of Bird et al.*, No. 100976-3

But in this case, it is a factual matter for the voters to decide. RSDB policy requires that the RSDB members be trained on the OPMA—therefore, RSDB members knew the OPMA's requirements. RSD, Bd. of Dirs. Pol'y No. 1805, *Open Government Trainings* (July 22, 2014) (requiring all board members to be trained on the OPMA), https://app.eduportal.com/documents/view/521839 [https://perma.cc/ZVY9-54QW]; *see In re Recall of Sawant*, 197 Wn.2d 420, 436, 483 P.3d 752 (2021) ("An elected official's ignorance of the law is not enough to circumvent an elected official's legal responsibilities under [Seattle Municipal Code] 2.04.165."). Additionally, RSDB member Jansons specifically alerted his colleagues about the notice defect before they took the vote—and they took the vote anyway. CP at 244 (Jansons states that "there was no discussion or notification that a motion for mask choice would be on the agenda. He feels ambushed."). The voters, not the court, must make the decision about who to believe on this count.

Count 2, as summarized by synopsis 1, is legally and factually sufficient.

II.     Synopsis 3 is factually and legally sufficient

Synopsis 3, which summarized counts 3 and 4, was identical for all three RSDB members. It stated, "3. Voted to make masks at schools optional, in knowing violation of the law and in excess of the powers of a school board, even after warnings from the State and from legal counsel." CP at 461, 979, 1492.

14

*In re Recall of Bird et al.*, No. 100976-3

The RSDB members first argue that the governor and the secretary of health lacked the power to mandate masks in Richland schools, so their vote did not violate the law. Opening Br. of Appellants at 31-35. This argument lacks merit because state statutes give the governor and the secretary of health the power to mandate masking pursuant to their authority under a state of emergency, and the local school board did not have the power to override that state-level action. RCW 43.06.010(12) (governor has power to declare state of emergency); .220(1)(h) (during state of emergency, governor has the power to prohibit activity that governor believes will "help preserve and maintain life, health, property or the public peace"); RCW 43.70.130(7) (secretary of health has the same power as local health officers during a state of emergency); Proclamation by Governor Jay Inslee 20-09.3, *supra* (requiring all personal protective behaviors set forth in the "K-12 Schools 2020-2021 Guidance" documents); Wash. Sec'y of Health Ord. No. 20-03.3 (Wash. June 29, 2021) (requiring people to wear cloth face coverings in K-12 school facilities), http://www.washingtonyouthsoccer.org/wp-content/uploads/2021/06/Secretary_of_Health_Order_20-03_Statewide_Face_Coverings.pdf [https://perma.cc/97AZ-MG9Y]; RCW 43.06.220(5) (any person who willfully violates an order issued under the governor's emergency powers is guilty of a gross misdemeanor); RCW 28A.320.015(1)(a) (a school board's discretionary power is expressly limited to

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

adopting policies not in conflict with other law). The decision to vote to remove the mask mandate was not within the board's discretionary power. Therefore, this count is legally sufficient.

Next, the RSDB members argue that they did not intend to commit an unlawful act, so the count is factually insufficient. Opening Br. of Appellants at 41. And whether the RSDB members knowingly violated the law is an important issue in a recall matter.

But the record includes "facts indicating" an intent to commit an unlawful act. *In re Recall of Sandhaus*, 134 Wn.2d 662, 668, 953 P.2d 82 (1998) (citing *Wade*, 115 Wn.2d at 549). And that's all that's necessary for the charge to go to the voters.

First, minutes of RSDB meetings preceding the February 15 vote show that the RSDB members were aware that the statewide mask mandate remained legally binding in their district. CP at 238 (at February 8 meeting, Jansons stated he supported removing the mask mandate, but not yet because "[h]is position is to follow the law"), 239 ("Ms. Oldson stated the removal of the mask mandate is finally being entertained [by state officials,] but until then, the District needs to obey the law."), 241 ("[Superintendent Dr. Redinger] also mentioned working with the Pasco and Kennewick Superintendents to advocate for our region and to put pressure on the Governor to set a date for releasing the mask mandate.").

*In re Recall of Bird et al.*, No. 100976-3

Second, the record includes several e-mails and letters by attorneys advising the RSDB that the public cannot remove their masks at in-person meetings, and this advice included references to the fact that masks were required in *all* public spaces. *Id.* at 96 ("The Secretary of Health's order generally requires masks to be worn during indoor public gatherings."), 98 ("these regulations expressly prohibit governmental agencies from allowing *any* individual who is not in compliance with these masking requirements to enter or remain in any indoor space under the agency's control"). Public spaces, of course, include schools. RSDB member Jansons also provided a declaration stating that the RSDB was advised by attorneys prior to the February 15 vote that masks were required in Richland schools and that the RSDB lacked the authority to overrule the governor's proclamations and the secretary of health's orders. *Id.* at 356-57.

Third, the record shows that RSDB members were aware that the mask mandate carried the force of law—and that they were knowingly defying a law with which they disagreed. For example, Byrd posted on Facebook after the February 15 vote, stating that she knew that the RSDB's resolution to remove the mask mandate in the district was unlawful. *Id.* at 375 ("If 'laws' are unethical or harmful, citizens have a moral responsibility to disobey and fight against such laws."), 376 ("The risks for 'being sued', 'losing insurance', 'fines from L&I [Washington State Department of Labor and Industries]', 'losing certificates', etc

17

*In re Recall of Bird et al.*, No. 100976-3

are minimal. In my opinion, it is compared to driving 35 in a 30 mph zone if that makes sense . . . is it illegal? Yes. Are you going to actually get in trouble? No . . . .”). Additionally, the RSDB members were clearly aware that masks were legally required at public meetings because they enforced masking at all board meetings. *Id.* at 237 (“Ms. Oldson asked all in the audience to put on masks or the meeting would be recessed and moved to a virtual format. With the state mask mandate in effect, if the meeting were to continue, all business would be considered null and void. After several more requests were made, all in attendance put on face coverings.”), 243 (at February 15 meeting, both Bird and Byrd “requested several times that all in attendance put face masks on”).

To be sure, the RSDB members provided declarations stating that they did not think that their vote violated the law. *Id.* at 273-77, 829-32, 1346-49. But as summarized above, the record also contains facts supporting the opposite conclusion. The petitioners sufficiently alleged the necessary intent to violate the law in the recall charge, and ultimately, it is “the voters, not the courts, who will . . . act as the fact finders.” *West*, 155 Wn.2d at 662.

Therefore, counts 3 and 4 are legally and factually sufficient.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Recall of Bird et al.*, No. 100976-3

III.     Synopsis 4 is legally insufficient

Three of the counts against each RSDB member allege that they violated the RSDB Code of Ethics in different ways.[1] These counts are summarized by the fourth ballot synopsis for each RSDB member, which stated, "4. Violated the District Code of Ethics by failing to: (1) uphold all laws, rules and regulations, and/or (2) use legal and ethical procedures; and/or (3) ensure schools are well run; (4) and/or consult those affected by changes in policy." CP at 461, 979, 1492.

In order to survive, these counts must charge that a violation of the RSDB Code of Ethics constitutes "misfeasance," "malfeasance," or "violation of the oath of office." This count is not based on any oath of office.[2] And as discussed above, "misfeasance" or "malfeasance" in office is defined as "any wrongful conduct that affects, interrupts, or interferes with the performance of *official duty*." RCW 29A.56.110 (emphasis added). Additionally, "misfeasance in office" "means the performance of *a duty* in an improper manner." *Id.* (emphasis added).

---

[1] These are counts 8, 9, and 10 for Bird. And counts 6, 7, and 8 for Byrd and Williams. Other than the count number, the counts are identical.

[2] The RSDB oath of office is neither included in the record nor publicly available. RCW 28A.343.360 requires that "[e]very person elected or appointed to the office of school director, before entering upon the discharge of the duties thereof, shall take an oath or affirmation to support the Constitution of the United States and the state of Washington and to faithfully *discharge the duties of the office* according to the best of his or her ability." (Emphasis added.) As explained below, the RSDB "duties" are different from the RSDB Code of Ethics.

19

*In re Recall of Bird et al.*, No. 100976-3

But only a violation of a mandatory duty (or a discretionary duty performed in a "manifestly unreasonable manner," which is not at issue here) can support a recall charge. *See generally In re Recall of Fortney*, 196 Wn.2d 766, 781-82, 478 P.3d 1061 (2021) (discretionary personnel decisions can form basis of recall petition if discretion exercised in "manifestly unreasonable manner").

Thus, the question is whether the RSDB Code of Ethics describes a mandatory duty. Given the description of the RSDB Code of Ethics in other RSDB documents, along with language in the RSDB Code of Ethics itself, the answer is no.

The RSDB Code of Ethics was enacted in the RSD policies. RSD, Bd. of Dirs. Pol'y No. RR 1710, *Code of Ethics* (rev. Oct. 24, 2006), https://app.eduportal.com/documents/view/532225 [https://perma.cc/P7K3-VQYW]. The RSDB Code of Ethics includes 15 provisions that vary from broad ("Be a staunch advocate of free public education") to specific ("Refer all complaints to the chief administrative officer and act upon such complaints at public meetings only after failure of an administrative solution").

The RSD has also enacted a policy titled "Duties of Individual Board Members." RSD, Bd. of Dirs. Pol'y No. 1240, *Duties of Individual Board Members* (rev. May 9, 2006),  https://app.eduportal.com/documents/view/521825 [https//perma.cc/XPX4-52LH]. This policy details mandatory or restricted actions

that an individual RSDB member can take. *Id.* (for example, "Each board member shall attend board meetings regularly and request that absences be excused by the board when the member is unable to attend"). The RSD also has a policy titled "Powers and Duties of the Board" that details the duties of the RSDB as a whole. RSD, Bd. of Dirs. Pol'y No. 1710, *Powers and Duties of the Board* (rev. Oct. 24, 2006), https://app.eduportal.com/documents/view/528449 [https://perma.cc/8XHV-FR84].

The last sentence of the Powers and Duties of the Board states that the "Board *requests* each of its members to subscribe to the code of ethics detailed in the accompanying regulation." *Id.* (emphasis added). The RSDB members argue that "requests" is discretionary language indicating that the RSDB Code of Ethics is optional. Opening Br. of Appellants at 21.

We agree.

That conclusion is supported by other language in the RSDB Code of Ethics. For example, count 9 for Bird and count 7 for Byrd and Williams allege that the RSDB members violated provision seven of the RSDB Code of Ethics. That provision seven states, "Recognize that his/her responsibility is not to run the schools, but together with fellow board members, to see that they are well run." CP at 12. What constitutes ensuring that the schools are "well run" is highly subjective and discretionary.

*In re Recall of Bird et al.*, No. 100976-3

The RSDB Code of Ethics states aspirational goals and not mandatory duties. Therefore, a violation of the RSDB Code of Ethics cannot form the basis for "misfeasance" or "malfeasance" unless the petitioners show that the elected official exercised their discretion in a "manifestly unreasonable manner"—which the petitioners neither allege nor argue. *See generally* Br. of Resp'ts at 47-50; *Fortney*, 196 Wn.2d at 781-82.

The counts underlying synopsis 4 are legally insufficient.

IV.    Synopsis 5 is factually and legally sufficient

Synopsis 5, which summarized count 12 for Bird and count 10 for Byrd and Williams, stated, "5. Violated District Policies and Procedures by failing to assure compliance with law and policy." CP at 461, 979, 1492.

This count was not based on the RSDB Code of Ethics discussed above.  It was based on a provision in the RSDB policy Powers and Duties of the Board, also mentioned above. That provision requires RSDB members to take "such actions as are necessary to assure compliance with law." RSD, Bd. of Dirs. Pol'y No. 1710, *supra*.

In contrast to the RSDB Code of Ethics, the RSDB Powers and Duties of the Board establishes mandatory responsibilities. *E.g.*, RSD, Bd. of Dirs. Pol'y No. 1240, *supra* (four absences from board meetings without cause sufficient to

22

*In re Recall of Bird et al.*, No. 100976-3

remove board member); RSD, Bd. of Dirs. Pol'y No. 1710, *supra* ("the Board of Directors is responsible for . . .").

This count is therefore legally sufficient because a violation of mandatory duties can constitute misfeasance.[3] RCW 29A.56.110 (misfeasance in office "means the performance of a duty in an improper manner"). The count is factually sufficient because, as explained above, the mask mandate applied statewide, the RSDB lacked the power to declare it unlawful or unenforceable, and the RSDB members' vote to make masks optional in Richland schools violated that law.

Therefore, the counts underlying synopsis 5 are factually and legally sufficient.

CONCLUSION

We uphold the counts underlying synopses 1, 3, and 5 and dismiss the counts underlying synopsis 4. We therefore affirm in part and reverse in part.

---

[3] The petitioners argue that an RSDB policy cannot form the basis for recall because the policies are not "tethered to a state statute" and it is not unlawful for the board members to violate the policies. Reply Br. of Appellants at 30-32. However, "misfeasance" in office does not have to constitute unlawful conduct but merely the "performance of a duty in an improper manner." RCW 29A.56.110. Therefore, a recall charge can be based on conduct that is not unlawful but does violate the official's duties.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Recall of Bird et al.*, No. 100976-3

_____
Gordon McCloud, J.

WE CONCUR:

_____
González, C.J.

_____
Stephens, J.

_____
Johnson, J.

_____
Yu, J.

_____
Madsen, J.

_____
Montoya-Lewis, J.

_____
Owens, J.

_____
Whitener, J.

24